# CASES

## ARGUED AND DETERMINED,

## JANUARY TERM, 1849.

---

### MEAD v. HUGHES'S ADMINISTRATOR.

1. A plea which sets out the consideration of the contract sued on, but does not aver wherein the consideration is insufficient, is no answer to the declaration and a demurrer to it is properly sustained.
2. A plea which sets up an agreement between the parties in bar of the action, without stating the terms of that agreement, is defective, and it is not error to strike it out on motion.
3. If a husband, with no intention of returning removes from this into another state,—declares his determination to abandon his wife, and absents himself for more than five years, the law confers on her the capacity of contracting and suing, as though she were a *feme sole*.

Errror to the County Court of Jackson. Before the Hon. James M. Green, Judge.

THIS was an action of covenant, &c. instituted by Samuel Hughes, in his lifetime, and after his death revived in the name of his administrator, against Samuel Mead, on an instrument of which the following is a copy :

"$270. On or before the first day of January next, I promise to pay Sinthia Hickman, or William Hickman, the just and full sum of two hundred and seventy dollars of com-

mon currency of this state. Witness my hand and seal, this 8th January, 1842. SAMUEL MEAD, [seal.]"

This instrument had been assigned to said Hughes. Mead filed seven pleas to the declaration. The second plea states the consideration on which the said instrument was given, but there is in it no averment that the consideration was illegal, or had failed, &c. A demurrer was interposed to it, and sustained by the court. The plaintiff moved the court to strike out the sixth plea, which avers that said instrument is void, and of no effect, by virtue of an agreement entered into, &c. "at the time of its execution, and subsequent thereto," without stating the terms of said agreement. The court sustained the motion. The first plea was replied to by plaintiff, and the replication to that plea, and the defendant's remaining pleas, present the issue, whether, under the facts of the case, the coverture of the said Sinthia, at the time of the execution of the instrument sued on, and the agreement which constituted its consideration, is an answer to the action. The facts disclosed by the bill of exceptions are these: In 1832, the said Sinthia was married to one George Brittain, and they lived together as man and wife until the fall of 1836, when Brittain abandoned her and left the state of Alabama, protesting previous to his departure, that he did not intend to live with the said Sinthia; since then he has not returned to the state, though he has been heard of in Illinois and Kentucky. After Brittain abandoned her, the said Sinthia resided in the house of her father, with her two children, the issue of the marriage, until the death of the latter; at the sale of her father's property, after his death, she made some small purchases in her own name, and executed her note therefor; she also contracted an account in her own name with a mercantile house in her neighborhood for goods, that she needed. The instrument sued on was executed on the 8th January, 1842, to her and William Hickman, whom she had a short time before married, and whose name she had assumed, in consideration of an assignment by her and said Hickman to the said Mead, of her interest in her father's estate, then in the hands of his administrator undistributed. There is nothing in the bill of exceptions going to show that said Mead has not realized said Sinthia's interest in her fa-

ther's estate, or that he is not in the uninterrupted enjoyment of it. Numerous charges were asked by the defendant's counsel, all of which were, in effect, that if the jury believed all the facts above set out to be true, then plaintiff was not entitled to recover; the charges asked, the court refused to give to the jury, but gave the reverse thereof. The several rulings of the court above stated, its refusal to give the charges asked, and the charges given, are now assigned as error.

CLAY & CLAY, for plaintiff in error.

It will be perceived from the bill of exceptions, that the court below charged, that the removal of a married man from this state to another state of the Union, and living there five years, constituted "abjuring the realm," and rendered the wife, remaining here, a *feme sole*, capable of contracting as such, by selling the property of the husband, &c. What is abjuration? 1 Tom. L. Dic. 17, tit. Abjuration; 1 Co. Lit. m. p. 135. What acts a wife may do, and when treated as a *feme sole*. 1 Tom. L. Dic. 206, tit. Baron and Feme, VI. When a husband has abjured the realm, or is banished, or has been transported for felony, being disabled to sue or be sued in right of his wife, she may be treated as a *feme sole*. Ib. But *quere*, whether she can be sued as a *feme sole*, after the period of transportation is expired, and the husband not returned? Marsh v. Hutchinson, 2 Bos. & Pul. 233.

A wife may use the goods of the husband, but she may not dispose of them. 3 Inst. 308, 310. The husband being domiciled in a foreign country, will not entitle a wife to contract, unless he be an alien enemy. 2 Boss. & Pull. 226; 11 East, 301; 3 Camp. 123; 1 Bos. & Pull. 357. A *feme covert* cannot contract, bring an action, or be impleaded as a *feme sole*, though she lives separately from her husband, and has a separate maintenance secured by deed, if the relation of marriage still subsists, and she and her husband are living in the kingdom. Marshall v. Rutton, 8 T. R. 545; 1 Thos. Co. Lit. m. p. 135, note P. and so on to the end of chap. X; 2 Kent's Com. 160. In general the absence of husband affords no ground for a wife's proceeding separately. Bogget v. Frier, 11 East, 301, and note; Clancy's H. & W. 61-2-3. Chancellor Kent (2 Kent's Com. 154, 162,) examines the En-

glish cases, and concludes that the doctrine laid down in Marshall v. Rutton is well established in England, and is to be considered the law in this country.

A *feme covert* whose husband has been absent six or seven years, and who, in the mean time, has carried on business as a *feme sole*, is still a *feme covert* in legal estimation. Commonwealth v. Collins, 1 Mass. T. R. 116. In the case at bar, it was proved that the wife purchased a few articles, but not that she traded, and obtained credit generally as a *feme sole*.

In Arthur and Corprew v. Brodnax, 3 Ala. 557, the question, what amounts to abjuration from the State? was not raised; but this court merely presumed, in favor of the court below, that enough was proven, as the contrary did not appear.

S. PARSONS, contra.

The note sued on was given in consideration of the interest which Sinthia Hickman had in the real and personal estate of her father, which she and William Hickman, her then husband *de facto*, at least, sold to the plaintiff in error. She was married to George Brittain, who abandoned her and left this state finally, in the summer or fall of 1836, without ever reducing her interest in her father's estate to his possession.

She married Mr. Hickman in the spring of 1841, and in 1842 she and Hickman sold and conveyed her interest in her father's land and personal estate to Mead, the plaintiff in error; and this was the consideration of the note. It does not appear but that Mead got the estate, or if not that he could not get it. The five years from the departure of Brittain had almost elapsed before the second marriage, and had fully elapsed before the sale. There is no legal proof that he was living, and none that she knew he was living at the time of the second marriage, or of the sale. But it appears that Mead knew the circumstances in which she was placed at the time of his purchase. Further, if her cohabitation with her second husband were illegal, still the sale had nothing to do with that, and she was as much bound by the sale as if her second husband had not joined in it. She was authorized to

make this sale, as Brittain had abjured. Gregory v. Paul, 15 Mass. R. 31; Clancy on H. & W. 56-7.

As land was the subject matter of the sale, and especially as it does not appear that the purchaser is not in possession, a failure of consideration in part is not a good defence. Dennis v. White, 1 Ala. 641; Cullum v. Br. Bank at Mobile, 4 Ib. 31; 1 S. & P. 71.

CHILTON, J.—We need hardly institute an inquiry as to the sufficiency of the second plea, to which a demurrer was sustained. It merely avers that the instrument sued on was executed in consideration of the sale to the plaintiff in error of the interest which Sinthia and George Brittain had in the estate of one Turner, deceased, who was the father of said Sinthia. It does not show that the consideration thus set out was illegal, had failed, or was wanting in any respect so as to render it insufficient to support the contract. It is no answer to the declaration, and consequently interposes no bar to a recovery by the plaintiff.

We think also, the court very properly rejected the sixth plea, on motion. It avers that the writing sued on was totally void, and of no effect, by virtue of the terms of an agreement entered into with the payees thereof, at the time of the execution of said writing, *and subsequent thereto.* The plea (to say nothing of its repugnant averment as to the time when the agreement was executed) does not aver what the terms of said agreement are, and thus fails to state the ground of defence. The plaintiff is not informed as to the matter he is called on to reply to, nor the jury of what they are to try. 1 Chit. Pl. 23. But as neither of these points are insisted upon by the counsel for the plaintiff in error, in their argument, we will turn to the main questions discussed, arising out of the facts and charges contained in the bill of exceptions.

As it respects the charges involving the sufficiency of the consideration, we think it clear, that the court below committed no error. It does not appear by the bill of exceptions but that Mead received, and now enjoys, all that he contracted for, and we must intend, in support of the judgment, that

such is the fact, and that he entered into the negotiation with a knowledge of the facts and circumstances under which the payees of the note transferred to him the interest to which Sinthia Brittain was entitled out of the estate of her father. There being no pretence of fraud, mistake, or surprise, in the transaction, we do not see upon what principle Mead can avoid the contract thus entered into. That he may subject himself to litigation, should Brittain sue for a part or the whole of the interest which he purchased, may prove that he made an indiscreet bargain, but certainly, in the absence of other circumstances, furnishes no reason for rescinding the contract.

It is insisted, however, that Sinthia Hickman, one of the payees of the sealed note declared upon, was, at the time of its execution a *feme covert*, and that for this reason the plaintiff cannot recover. The facts show, that she was married to one George Brittain, in 1832; that they lived together as man and wife until the fall of 1836, when Brittain abandoned her, and left the state, protesting previous to his departure, that he did not intend to live with her. There was some proof that he had since been heard from in the States Illinois and Kentucky, but he had never, in the knowledge of any of the witnesses, since his departure from the state, returned to it. After her abandonment, Sinthia resided in the house of her father, with her two children, the issue of the marriage, until his death, and at the sale of his property by his administrator, made some small purchases in her own name, and executed her individual note. Also, she had contracted an account with a mercantile firm in the neighborhood for goods. The obligation in suit was executed to her on the 8th day of January, 1842, and at the same time she and her second husband, to whom she had then lately been married, executed and delivered to the plaintiff in error their written transfer of the interest of said Sinthia in the estate of her said father, both as to his real and personal property.

We need express no opinion as to the validity of this second marriage, which was entered into before the expiration of five years from the departure and abandonment of Brittain. We will consider the case as though it had never been consummated. The question is then presented, whether, under

the facts of the case, the court below should have given the charges asked by the plaintiff in error. The substance of the charges, when construed as applicable to the facts, is, that the voluntary abandonment of the wife by the husband, and his residence in another state, as shown in the bill of exceptions in this case, did not confer upon the wife the capacity to trade as a *feme sole.*

There is no doubt but that by the rigid rules of the common law, the wife, under the circumstances here presented, would labor under all the disabilities of coverture, and the authorities cited by the counsel for the plaintiff in error show, that the settled law of the English courts, sustains the view for which he contends. The English cases however are not at all consistent upon the doctrine, as will be seen by reference to the work of Mr. Clancy on Husband and Wife, page 54, *et seq*, where the cases are collated and commented upon. But a more liberal rule, and one which we think is more consonant with reason and justice, seems to obtain in this country. In Gregory v. Paul, 15 Mass. Rep. 31, it was held, that a *feme covert*, where the husband had deserted her in a foreign country, and who had thereafter maintained herself as a single woman, and had for five years been living in that state, her husband being a foreigner, and never having been in the United States, was competent to sue and be sued as a *feme sole*, and that her release would be a valid discharge for any judgment she might recover. The judge, in delivering the opinion in that case, remarks, "miserable indeed would be the situation of those unfortunate women, whose husbands have renounced their society and country, if the disabilities of coverture should be applied to them during the continuance of such desertion. If that were the case, they could obtain no credit on account of their husbands, for no process could reach them; and they could not recover for a trespass on their persons or their property, or for the labor of their hands. They would be left the wretched dependents upon charity, or driven to the commission of crimes to obtain a precarious support."

In Abbot v. Bayley, 6 Pick. Rep. 89, it was held, that where a husband, by his cruelty, drove his wife from his house, in the state of New Hampshire, and she went to Mas-

sachusetts, where she maintained herself for more than twenty years as a single woman, the husband having always been a citizen, and residing in the state of New Hampshire, and having since her expulsion, married and cohabited with another woman, the wife was entitled to sue as a *feme sole.*— See also, Reeves' Dom. Rel. 99.

So also in Starrett v. Wynn et al. 17 Serg. *&* R. 130, the court say, "the question then arises when the husband has abandoned his wife, and separated from her, does his marital rights still continue so as to give him an absolute property in her acquisitions. Unless some positive rule of law intervenes, as he has cut himself loose from the duties which the relation of marriage imposes, he shall not be allowed its advantages. His conduct would amount to a virtual surrender of his rights." See also, Robinson v. Reynolds, 1 Aikin's Rep. 174; Beane v. Morgan, 4 McCord's Rep. 148; Brown v. Killingsworth, Ib. 429.

These authorities may suffice to show, that if the husband depart from this state into another, without the intention of returning, having declared his intention to abandon his wife, and having been absent, as in this case, for more than five years, the law confers on her the capacity of contracting and suing as though she were *sole.*

The doctrine of abjuring the realm, as it once obtained in England, by which the husband became *civiliter mortuous,* was an incident to the right of sanctuary, which was abolished by statute, 21 Jac. 1, ch. 28, and of course finds no place in our law. The decision of this court in Arthur *&* Corprew v. Broadnax, 3 Ala. Rep. 557, affirms, that if the husband has abjured the state, and remains abroad, the wife meanwhile trading as a *feme sole,* could recover on a note which was given to her as such. We must consider the term abjure, as there used, as implying a total abandonment of the state; a departure from the state without the intention of returning, and not a renunciation of one's country, upon an oath of perpetual banishment, as the term originally implied.

In the case at bar, the wife, deserted by an unfeeling husband, seeks an asylum for herself and two infant children in the bosom of her father's family, where she remains until

his death.   Thus cast upon the  world with her helpless off-spring, without protection, and it may be without the means of support, she sells to the defendant her  humble  patrimony for $300, and receives the note in suit  to  secure  the  pay-ment, and this transaction occurs more  than five years from the period of her desertion.   The  defendant,  who  we must presume has received  her  living, now that he  is  sued upon the note, says he ought not to pay it, because she  has a hus-band who may return  and claim the fund.   In our opinion, the husband  has forfeited  all  claim to it,  and  the charges, with the qualifications, given  by the  court, are quite  as fa-vorable to the defendant as the law will justify.

Let the judgment be affirmed.