[Scott v. Cotten.]

# Scott *v.* Cotten.

*Bill in Equity for Foreclosure of Mortgage.*

| 91  | 623 |
| --- | --- |
| 97  | 448 |
| 91  | 623 |
| 98  | 478 |
| 91  | 623 |
| 108 | 216 |
| 108 | 549 |
| 109 | 114 |
| 91  | 623 |
| 115 | 554 |
| 91  | 623 |
| 119 | 315 |
| 91  | 623 |
| 124 | 335 |
| 125 | 372 |
| 91  | 623 |
| 127 | 102 |

1. *Production and identification of secured notes.*—Under a bill for the foreclosure of a mortgage, given to secure the payment of a note therein particularly described, the complainant is required to produce the note, or account for its non-production; but, if he produces a note which corresponds in every particular with the description given in the mortgage, the identification is *prima facie* sufficient.

2. *Same.*—The mortgage being given on a stock of goods sold by plaintiff to defendant, who was a married woman, to secure the unpaid part of the purchase-money, as evidenced by two notes particularly described; and the execution of the notes produced being denied by her by sworn plea, alleging that they were not the notes which she authorized her husband to sign, and which he told her he had signed; the complainant may have a foreclosure on the recitals and admissions of indebtedness, without producing the conditional notes said to have been given, when the evidence does not establish the fact that such notes were in fact given.

3. *Contracts of married women.*—Under statutory provisions now of force (Code, § 2346), a married woman may "contract in writing as if she were sole, with the assent or concurrence of the husband expressed in writing;" and the husband's signature to the writing, jointly with the wife, sufficiently shows his assent or concurrence; but she can not, by authority given verbally, or resting in parol, confer on her husband capacity to sign her name to a writing, and thereby bind her by the contract.

4. *Married women "engaging in trade or business."*—Under statutory provisions, a married woman may "enter into and pursue any lawful trade or business as if she were sole," with the consent of the husband, expressed in writing, duly filed and recorded (Code, § 2350); and a contract for the purchase by her of a stock of goods, with the good-will of the business, intending to carry it on in her own name, is not void, although the assent of her husband had not then been given in writing, filed and recorded.

APPEAL from the City Court of Decatur, in equity.

Heard before the Hon. W. H. Simpson.

The bill in this case was filed on the 28th June, 1889, by John F. Scott, against Mrs. Mary W. Cotten, the wife of Samuel R. Cotten; and sought to foreclose a mortgage on a stock of goods which the complainant had sold to Mrs Cotten, taking the mortgage as security, and, as recited therein, her two notes, for the balance of purchase-money unpaid. On final hearing, on pleadings and proof, the City Court dismissed the bill, but without prejudice; and its decree is here assigned as error. The opinion states the material facts on which the decision is based, and any additional statement is unnecessary.

[Scott v. Cotten.]

BRICKELL, HARRIS & EYSTER, and HUMES, WALKER & SHEFFEY, for appellant.

MORRIS A. TYNG, and WATTS & SON, *contra*.

CLOPTON, J.—The City Court dismissed the bill, which was brought by appellant to foreclose a mortgage on a stock of goods, mainly on the grounds, that the execution of the notes produced on the hearing was not shown, and the failure of the complainant to produce the notes which the court ascertained were given contemporaneously with the mortgage, or to account for their absence.

The undisputed facts are : On September 15, 1888, complainant and defendant, who is a married woman, entered into a written agreement, in the execution of which her husband united, for the sale of a stock of goods, at the price of thirteen thousand and five hundred dollars. Defendant agreed to convey to complainant two lots in New Decatur, in payment of five thousand dollars of the sum agreed to be paid, and to execute two notes, one for thirty-five hundred dollars, due seven months, and the other for five thousand dollars, due twelve months after date, both payable at the Exchange Bank of Decatur, and also to execute a mortgage on the goods to secure the indebtedness. In pursuance of the agreement, defendant procured a conveyance of the lots to be made to complainant, and jointly with her husband executed the mortgage, the foreclosure of which is sought by the bill. There are other conditions and stipulations in both instruments, unnecessary to be stated. Copies, shown and admitted to be correct, are made exhibits to the bill. Also, copies of two notes are attached as exhibits B and C, which the bill avers were made and delivered in accordance with the agreement, and as the notes referred to in the mortgage, and which were produced by the complainant on the trial. The execution of the notes was impeached by answer verified by affidavit, which cast upon complainant the burden of proving their execution. The evidence clearly shows they were not signed by Mrs. Cotten. What effect this should have upon complainant's right of recovery, will be hereafter considered.

Whether these notes, being unconditional promises to pay, or notes expressing conditions, were delivered with the mortgage, was the fact mainly controverted, in respect to which much testimony was taken by both parties. In weighing the evidence, the general rule should be observed, that the burden of proof is upon the party holding the affirmative—upon complainant, to show that the notes produced were the notes

[Scott v. Cotten.]

given; and upon defendant, to show that notes expressing conditions were given, the non-production of such notes being the ground on which she seeks to defeat a foreclosure.

The direct evidence, consisting of the testimony of complainant, his attorney, and Jarvis, on the one side, and of defendant's husband and Gay, on the other, conflicts as to the notes given in fact. The opinion of the expert witnesses, that the signature to the notes produced is not in the handwriting of the husband, tends to corroborate his testimony, especially in view of the proof that the notes were not signed by Mrs. Cotten; but the strength of the corroboration is somewhat impaired by the difficulty of forming a positive opinion by a comparison of signatures, the initials of which are different, and by the fact that a person, attempting to imitate the signature of another, necessarily disguises his own handwriting. Defendant also insists, that the provision, the mortgagee could take possession, and sell or foreclose in certain events, "any thing in this mortgage, or in the said notes, to the contrary notwithstanding," shows it was not intended that the notes, the evidence of the mortgage debt, should be absolute, unconditional promises for the payment of money, but that they would and should contain a stipulation, condition or provision, which might hinder a foreclosure, or the exercise of the power of sale. The mortgage empowers the mortgagee to take possession and sell the property, on default in payment of the notes, or either of them, when they respectively matured, unless the mortgagor was unable to pay them by reason "of depression in business caused by providential hindrances," which condition was inserted on account of the prevalence of yellow fever. As, under this provision, the mortgagee could not exercise the power to sell, until default in the payment of the notes at maturity, it was further provided, for the purpose of conserving the security, that if the mortgagor shall sell or dispose of, or attempt to sell or dispose of, the whole or any part of the mortgaged goods, except for cash, or in the ordinary course of business, without the written consent of the mortgagee, or shall remove or attempt to remove them from the store, except when sold in the manner provided, or the security shall become insufficient; in either case, the indebtedness shall become due, and the mortgagee may, at his election, take immediate possession, and foreclose the mortgage, and sell the property as provided in case of default in payment, "any thing in this mortgage, or in the said notes, to the contrary notwithstanding." Reading the entire provision in connection with the terms of the power of sale, the manifest intent and meaning are, that upon the happening of either of the specified

40

contingencies, the indebtedness should become due, and the mortgagee might sell the property, notwithstanding the notes had not matured, and inability to pay by reason of depression in business. It does not indicate an intention that the notes themselves should express any condition not mentioned in the description given in the mortgage, or should be other than unconditional promises for the payment of money on the days named.

Consideration in detail of the collateral and incidental circumstances, which have been discussed at length by counsel, would unduly extend this opinion, without serving any useful purpose, for they tend to strengthen or weaken the positive evidence, according to the aspect in which they are viewed. Passing these, we proceed to other considerations, which, from their nature, ought reasonably to influence the conclusion as to the disputed fact.

Exhibits B and C, which are averred in the bill to be correct copies of the notes made and delivered, were before defendant, and examined by her, when she filed her original answer, August 31, 1889. It is true, while admitting in the answer that two notes were executed for the respective amounts mentioned in the bill, she states she did not know that the exhibits were correct copies, and did not admit the execution of the notes, reserving the right to answer as to this more fully thereafter as she might be advised. If a stipulation was expressed in the notes, that they were to be credited with the amount of the damaged goods, as now claimed, a casual examination of the exhibits would have disclosed the omission of such stipulation; and defendant ought to have denied their correctness, and not merely have averred ignorance. Instead of this, the claim made in the answer was, that complainant, as part of the contract of purchase, was to execute a separate instrument, agreeing to deduct from the agreed price the amount of the damaged goods in the stock, which he failed to do, having immediately left the city on account of the yellow fever, and refused to execute after his return.

On her examination as a witness in September following, when asked to what notes she referred in her answer, she states, "The notes we promised to give complainant; the notes were given with the understanding that the time was to be lengthened, on account of the yellow fever." Also, after testifying that she herself never executed any notes such as she agreed to give complainant, she testified that her husband informed her, about September 15, 1888, that he had executed the two notes shown to her on her examination, being the originals of exhibits B and C, and that she did not make any

[Scott v. Cotten.]

objection to his signing them, if he signed them as she authorized. In the amended answer, filed November 5, 1889, after the examination of the witnesses, defendant for the first time denied the execution of the notes, and alleged that the notes which she authorized her husband to sign in her name, and which were signed by him, expressed that the time of payment should be extended, if unable to pay them at maturity in consequence of depression in business, and that the amounts of the notes should be reduced by the diminished value of the goods by reason of their damaged condition. This does not seem to have occurred to defendant until the witnesses were examined, and is inconsistent with her testimony, wherein she testified that she authorized her husband to sign the notes on condition that the time would be extended if the yellow fever prevailed long, and that her husband informed her that complainant had promised to extend the time, and he signed the notes upon this condition; also, that she authorized him to deliver the mortgage, not the notes, provided complainant would give credit for the amount of damaged goods. The only condition on which, according to her evidence, she authorized the notes to be signed, was substantially expressed in the mortgage; and for the agreement to reduce the amount of the notes, the condition on which the mortgage was to be delivered, she set up in her original answer that complainant was to execute a separate writing. The evidence of defendant is corroborative of the testimony of complainant and his witnesses, as to the character of the notes intended to be and actually given.

The positive evidence is also greatly strengthened by the evidentiary writings other than the notes. The agreement of sale specifically describes the notes, which defendant promised to give, by dates, amounts, and times and places when and where payable, as absolute, unconditional promises to pay money. The description of the notes in the mortgage corresponds in every particular with the description in the agreement. Though the recital in the mortgage may be insufficient to overcome the sworn denial of execution, when the question is one, not of execution, but of identity—whether notes corresponding with the description in the mortgage, or notes differing therefrom, were given—it being shown that none were signed by the mortgagor, the recital is a solemn admission of the contents, and is at least *prima facie* evidence that the notes produced by complainant, corresponding in date, parties, amounts, times and places of payment, are the notes delivered, as having been executed in accordance with the mortgage, and in pursuance of the agreement.

[Scott v. Cotten.]

We have devoted more consideration to this question of fact than appears to be necessary, because it is the fact on which defendant principally relies to defeat a foreclosure, and has been most elaborately discussed by counsel. Upon a careful examination of the evidence, we are forced to conclude, that the fact is left in such doubt and uncertainty that it can not be regarded as established, so as to devolve on complainant the duty to produce notes expressing conditions, or to explain their non-production.

It is further insisted that, in order to entitle complainant to a decree of foreclosure, it is incumbent on him, under the averments of the bill, to produce notes executed by the mortgagor, or by some person authorized to bind her. The argument is, that the parties, not choosing to rely on the recitals of the mortgage, contracted to make the notes therein referred to the higher and better evidence of the debt, and their production is essential to establish its existence. The general rule is well settled, that when the mortgage refers to a note which is executed, failure to produce it is *prima facie*, and, unexplained, conclusive evidence of the non-existence or discharge of the mortgage debt. The rule is only applicable, when it appears that a note or other separate evidence of the debt accompanied the mortgage. It rests on the theory, that possession of the mortgage not being conclusive evidence of the ownership of the debt, the production of the note, which may be transferred, is necessary to prevent a foreclosure in favor of a party not entitled, and the mortgagor's deprivation of the benefit of payments, which are usually indorsed on the note. *O'Bannon v. Meyers*, 36 Ala. 551. The reason of the rule ceases, when no note, or other separate evidence of the debt, is given, and the recitals of the mortgage furnish sufficient evidence of its existence.—*Munoz v. Wilson*, 111 N. Y. 295; *Goodhue v. Berrien*, 2 Sandf. Ch. 630; 1 Jones on Mortgages, § 353.

Section 2346 of the Code does not enlarge the capacity of a married woman to contract in all the usual modes; but only "to contracting in writing, as if she were sole, with the assent or concurrence of her husband, expressed in writing." The statute is enabling and restrictive, conferring the power to contract in the specific mode prescribed. Two things are essential—a written contract by the wife, and written assent or concurrence of the husband. The husband of Mrs. Cotten having, jointly with her, executed the agreement and mortgage, this was, as respects those instruments, a substantial compliance with the statutory requirements, and, it may be, extended to the execution of notes in pursuance thereof, without further

or other expression of his assent or concurrence.  It is clearly shown that Mrs. Cotten did not herself execute notes in compliance with the agreement, or sign the notes which accompanied the mortgage, whether they be the notes produced by complainant, or notes expressing conditions.  The wife is incapable to confer authority, resting in parol, upon her husband, or any other person, to make or sign a contract in her name; this is not contracting in writing in the meaning of the statute. The notes not having been signed by Mrs. Cotten, or by any one lawfully authorized to bind her, complainant's right of recovery depends on the principles applicable in a suit to foreclose a mortgage, which refers to a note, when none is in fact made and delivered.

Under the statute formerly in force regulating the separate estates of married women, which conferred no power to contract, a mortgage jointly executed by the husband and wife, of lands purchased by her to secure a note for the purchase-money, was upheld as a valid and operative security, though the note did not bind her personally.—*Strong v. Waddell*, 56 Ala. 471.  On like principle, Mrs. Cotten and her husband, having jointly executed the mortgage, on goods bought by her to secure the unpaid purchase-money, a court of equity will maintain and enforce it, though no binding personal security for the debt is given by note or otherwise.—*Brookings v. White*, 49 Me. 479; *Eacho v. Cosby*, 26 Gratt. 112.  In the case last cited, a bill was filed to sell property conveyed by a deed of trust to secure a note mentioned therein.  Complainant having failed to prove that the note in controversy was actually given as averred in the bill, the chancellor ruled that, as the deed of trust referred to a note as the evidence of the debt, it was incumbent on complainant, in order to complete that evidence, to show that the note was not only executed, but delivered.  In reference to this ruling, Staples, J., says: "If one is indebted to another for goods sold, or money loaned, and executes therefor an instrument which is invalid, or which he never delivered, I imagine there can be no question as to the creditor's right of recovery upon the original cause of action. If, in such case, the debtor executes a deed of trust or mortgage to secure the debt, and in the deed refers to a note, it will scarce be maintained that the deed is a nullity, because there is a failure, fraudulently or negligently, to execute and deliver the note.  The true inquiry is, does the debt exist?  Is it due? When this is satisfactorily ascertained, the form of security is important so far only as it affects the remedy.  It is not essential there shall be any bond or note whatever.  The deed of trust or mortgage will be valid without any other evidence of

[Scott v. Cotten.]

the debt than is furnished by its own recitals." These observations are especially apposite, that case and the present being parallel in their material features, and the ruling of the lower court and the contention being substantially the same in each.

It is true, the bill avers that notes of a specific description, copies of which are attached as exhibits, were made and delivered. These notes were produced on the hearing, when it was shown they were not executed by the mortgagor. The bill also avers the existence and amount of the debt independently. Failure to prove an indebtedness to the amount named in the bill, does not constitute a variance between the allegations and proof. So likewise, when the debt is of the same character, failure to prove the execution of the notes, the evidence of the debt, separate from the admissions in the mortgage, does not make a case of variance, but merely raises a question as to the sufficiency of the proof of the debt. The existence of the debt is the inquiry in cases of foreclosure, the mortgage not being otherwise questioned. In ascertaining this fact, that notes are not made and delivered as recited in the mortgage, is a circumstance to be considered and weighed in connection with the other evidence; but they are not essential to the sufficiency of the proof of the indebtedness. The mortgage recites an indebtedness of eighty-five hundred dollars, as shown by two promissory notes specifically described, and that it is executed to secure "the payment of said indebtedness, and of said notes." These recitals are express admissions of an indebtedness in a specified sum by the mortgagor to the mortgagees, and are sufficient evidence in the absence of countervailing proof. The answer admits that the indebtedness was contracted in the purchase of goods, and sets up as defenses set-off and reduction of the agreed price by the amount of the damaged goods. The existence of the indebtedness being satisfactorily proved, the mortgage is a valid security, and the non-production of the notes recited therein, as having been made and delivered, is sufficiently accounted for to prevent a dismissal of the bill.

It is further insisted, that the contract of sale and the mortgage are void, for the reason that the goods were sold and purchased in contemplation and for the purpose of Mrs. Cotten engaging in the business of merchandising, which she, at the time, had no capacity to do, her husband not having consented in writing, and the writing filed and recorded in the office of the judge of probate, as required by section 2350 of the Code. The statute does not declare it unlawful for a married woman to enter into and pursue a trade or business, nor prohibit her from doing so under a penalty. It is enabling, enlarging her

[Wikle v. McGraw.]

capacity at common law in this respect, not prohibitory. The contract of purchase is lawful, and the contemplated business is lawful. In *Yarbrough v. Bush*, 69 Ala. 170, it was held, that a plea of coverture is no defense to an action brought against a partnership by the firm name, of which a married woman was a member, as the effect of such action is not to enforce a personal liability, or to obtain a personal judgment against her. Also, in *Rabbitts v. Orr*, 83 Ala. 185, it was held that a married woman, owning an equitable separate estate, may become a member of a partnership, and thereby subject her interest in the partnership property to the payment of the partnership debts. These decisions rest on the principle, that there is no illegality in such transactions. Neither can it be inferred from the agreement and mortgage, that the complainant contemplated or understood that Mrs. Cotten would carry on the business without compliance with the requirements of the statute, which was done a short time afterwards.

The other matters of defense—set-off and abatement of the purchase-money by the amount of the damaged goods, if any, not having been considered and decided by the City Court, are not before us for review. Only the questions that go to the dismissal of the bill are properly presented, and have been pressed by counsel. The cause will be remanded, that the case may be prepared for a hearing as to the other defenses, and that they may be considered and adjudicated.

Reversed and remanded.