# McAnally v. Alabama Insane Hospital.

*Action Against Married Woman, on Written Contract.*

1. *Contracts of married woman, as affected by insanity of husband.*— At common law, the insanity of the husband does not remove the disability of the wife to bind herself by contract; and, the statutory power of a married woman to contract being specifiied and limited by the terms of the statute (Code, §§ 2346, *et seq.*), she cannot, either under the authority to alienate her lands and dispose of her personal property, as if she were sole, if the husband be of unsound mind (Code, § 2348), or under the power to engage in business or trade, without the consent of her husband, if he be of unsound mind (Code, § 2350), bind herself by a contract, made while her husband is insane, to pay for his support in an asylum. (BRICKELL, C. J., and COLEMAN, J. dissenting).

APPEAL from the City Court of Birmingham.

Tried before the Hon. W. W. WILKERSON.

The appellee, the Alabama Insane Hospital, a corporation, brought this action against the appellant, Catherine McAnally, and E. F. Enslen, upon a bond executed by them, with a penalty of $500, upon certain conditions, among which was the following: "Whereas Patrick McAnally is about to be admitted as a paying patient into the said hospital, now if while he shall remain therein the undersigned shall constantly supply him with suitable clothing and pay all charges of said hospital against him, quarterly in advance," said bond to be void, otherwise to remain in full force and effect.

The complaint averred that these conditions of the bond were broken, in that, on August 25, 1890, Patrick McAnally was admitted to said hospital, and remained therein until January 5, 1892, and was by the plaintiff supplied with suitable clothing and was fed, maintained and supported therein at the cost of said corporation, for which said defendants have become, remain and are now justly indebted to the plaintiff in the sum of $245.46, which indebtedness the defendants, by the terms of said bond, bound themselves to pay, but, though often requested, have refused and failed to pay. The defendant Catharine McAnally filed the following plea : ''That at the time she made the contract mentioned in the complaint she was a married woman, under the coverture of her husband, Patrick McAnally.'' To this plea the plaintiff filed the following replications : ''(1) That at the time said defendant executed said bond sued on, her husband, Patrick McAnally, was insane, and incompetent thereby to give his assent in writing to her execution thereof. (2) That at the time said defendant executed said bond she represented to plaintiff that her husband, Patrick McAnally, was of unsound mind, in order to induce plaintiff to admit him to said hospital. (3) Said defendant represented at the time said bond was executed that her said husband was *civiliter mortuus* and incapable of giving his assent in writing to her execution of said bond, and upon the faith of said representation plaintiff received said Patrick McAnally as a patient in its hospital, and supplied him with necessaries.'' To these replications the defendant Catherine McAnally demurred as follows : To the first replication, that the fact therein alleged did not relieve the defendant of the disabilities of coverture so as to authorize her to make the contract sued on. To the second replication, that the representations therein imputed to defendant did not estop her from pleading her coverture, nor create any obligation against her. To the third replication, the same ground as interposed to the second, and, further, that in law a married woman is not liable for necessaries furnished her husband. The court overruled the demurrers to the first replication, and sustained the demurrers to the second and third replications. The defendant Catherine McAnally declining to plead over or to take issue on the first replication, the court, a jury

having been waived, rendered judgment against her in favor of the plaintiff, to which judgment she excepted. She appeals, and assigns as errors the overruling of the demurrer to said first replication, and the rendition of judgment against her.

C. B. POWELL and Jo. G. CREWS, for appellant.—(1) This is a contract of suretyship. The suit is on the bond given under the statute, which bond being a contract of suretyship for the husband's debt or liability, is void.—Code, §§ 2341, 2349, 1236; 14 Am. & Eng. Encyc. of Law, 626; *Radford v. Carwile*, 13 W. Va. 573; *Alexander v. Miller*, 16 Pa. St. 215. (2) The contract is not binding, because of the absence of the consent of the husband, expressed in writing.—Code, § 2346; *Powerly v. Vogel*, 42 Mo. 291; 14 Am. & Eng. Encyc. of Law, 620. (3) As a general rule, the insanity, infancy, or other incapacity of a husband, does not affect the personal *status* of his wife.—14 Am. & Eng. Encyc. of Law, 592; *Young v. Pollak*, 85 Ala. 444; *Davis v. Carroll*, 71 Md. 568. (4) Under Alabama law, there is no exception to the statutory requirement that the written consent of the husband is necessary to make the contracts of a wife valid. The exceptions, when the husband has abandoned her, or is *non compos mentis*, &c., relate to her dealings in regard to her separate estate. The contract sued on being merely a personal contract, without relation to her separate estate, is void, in the absence of the written consent of her husband.—*Davis v. Carroll, supra*, 14 Encyc. of Law, 609; *McKee v. Reynolds*, 26 Iowa, 578; *Pond v. Carpenter*, 12 Minn. 430; *Payne v. Thompson*, 44 Ohio St. 192; *Canal Bank v. Porter*, 99 U. S. 325; *Sykes v. Chadwick*, 18 Wal. 141; *Wilkinson v. Cheatham*, 45 Ala. 337; *Smith v. Hudson*, 13 S. W. 597; *Howard v. Kitchen*, 31 s. c. 400. (5) The statutes enlarging the power of the wife are enabling statutes, and must be strictly construed. Where the power of the wife to contract is derived from the statute, she has only the power expressly conferred, and such power must be executed in the manner prescribed by the statute.—*Davidson v. Lanier*, 51 Ala. 318; *Weil v. Pope*, 53 Ala. 585; *Parker v. Wimberly*, 78 Ala. 64; *Scott v. Cotten*, 91 Ala. 625; *Vincent v. Walker*, 93 Ala. 165; *Ashford v. Watkins*, 70 Ala. 156; *Falk v. Hecht*, 75 Ala. 293.

WARD & CAMPBELL, *contra*, cited : (1) As to rule as to common law disabilities of a married woman,—Thomas' Coke on Littleton, Vol. 1, 112a–129, *et seq*.; Reeve's Dom. Rel., 98 ; note to *Arthur v. Broadnax*, 37 Am. Dec. 709 ; (2) As to exceptions to the rule, and reasons therefor, —*Arthur v. Broadnax, supra, Mamby v. Scott*, 3 Smith Leading Cases, 1752; *Gregory v. Paul*, 15 Mass. 31 ; *Roland v. Logan*, 18 Ala. 307 ; *Shea v. Sherman*, 1 Pet. 105 ; *Love v. Moyenham*, 16 Ill. 277 ; *Carsten v. Hanselman*, 61 Mich. 426 ; (3) as to the husband's liability at common law for the wife's engagements for necessaries furnished her, upon grounds of an implied agency,—*Mamby v. Scott, supra; Sawyer v. Cutting*, 23 Vt. 433 ; *Benjamin v. Benjamin*, 15 Conn. 347 ; *Freestone v. Butcher*, 38 E. C. L. 375 ; (4) as to wife being head of family and having control during insanity of husband,—*Robinson v. Frost*, 54 Vt. 104 ; and, (5) as to right of wife to sue as if sole, when her husband is insane, and confined in an asylum in another State,—*Gustin v. Carpenter*, 51 Vt. 585.

JAMES E. WEBB also filed a brief for the appellee, in support of the following, among other, propositions : Section 2346 of the Code has no application where the husband, by reason of his insanity, is incapable of assenting to a contract of his wife. That section, in fact the whole chapter creating and regulating the seperate estate of the wife, is a statute greatly enlarging the powers and rights of married women, and was not intended to restrict them in the least.—91 Ala. 630. By the common law, a married woman whose husband was insane, or *civiliter mortuus*, could contract.—2 Kent Com. star p. 155; Clark on Contracts, 276. 277, 252 note ; *Meade v. Hughes*, 15 Ala. 141 ; *Krebs v. O'Gready*, 23 Ala. 726 ; *Cheek v. Bellows*, 17 Texas, 633 ; *Carroll v. Blencow*, 4 Esq. 27. The reason of the rule which allows a married woman, whose husband is insane, to contract, is twofold. In the first place, his insanity prevents the husband from working, and earning a support for his wife and family, and the support of herself and children depends on the exertions of the wife. She cannot engage in any business, or earn the necessaries of life, without having the power to contract. In the second place, if the husband has property, he cannot contract when insane. At common law, the wife's personal property, when re-

duced to possession, became absolutely the husband's, and in her real estate he became seized of an estate for life. So, the wife was deprived of her property; and, if she could not contract to labor and earn, she must starve. She was supposed to be under the protecting care of her husband. It was with this idea that section 2346 of the Code requires the husband's assent to the wife making a contract. When the reason of the rule ceases the rule itself ceases. If the husband be insane, he can no longer give the wife the benefit of his advice; and she is then as if she had no husband to lend his advice to her in making contracts. The object in requiring the husband's consent was to protect the wife from imposition. If the husband is insane, no purpose of the statute can be subserved by requiring the husband's assent in writing to the wife's contracts. If the insanity of the husband does not emancipate the wife, so as to give her power to make contracts, under section 2346 of the Code, then it must be held that, if the husband is insane, she cannot carry on any business, under section 2350 of the Code, because she cannot get his assent in writing, to be filed of record. And her power to carry on any business, and to earn a living, would be absolutely gone. Such a construction cannot be imputed to our legislature which enacted section 2346 of the Code.

HARALSON, J.—At common law, marriage vested in the husband the title of the wife to all personal chattels, of which she had actual or legal possession; and to her real estate he gained a title only to the rents and profits during coverture, but the estate itself remained entire to the wife, after the death of her husband, or to her heirs, if she died before him, unless by the birth of a child, he became tenant for life by the courtesy.—2 Brick. Dig. 71, 72, § § 36, 51. At common law the wife was generally incapable of entering into any valid contract, to bind either her person or property, and could not be sued at law in an action *ex contractu*; and, except as modified by statute, this disability continues to exist.—2 Story Eq. Jur. § 1397; Reeve's Dom. Relations, 138; 14 Am. & Eng. Ency. of law, 60⅟; *Davis v. Carroll,* 71 Md. 570; *Bank v Partee,* 99 U. S. 332; 3 Brick. Dig. 545, § § 52, 53. This rule of the common law has been modified in this State, and "The wife has full legal ca-

8

pacity to contract in writing, as if she were sole, with
the assent or concurrence of her husband expressed in
writing.''—Code, § 2346. This statute, as to contracts
therein referred to, does not enlarge the capacity of a
married woman to contract in all of the usual modes;
but, as we have heretofore held, it is enabling and re-
strictive,—enabling, so as to authorize her to contract in
any manner that she could do if a *feme sole*, with the
written consent and concurrence of her husband; and
restrictive, in that it denies this power, except in the
specific mode prescribed in the statute. For the full ex-
ercise of the power to contract, two things are necessa-
ry,—a written contract by the wife, and the written as-
sent or concurrence of the husband for her to make
or enter into the contract.—*Scott v. Cotten*, 91 Ala.
628.

One of the exceptions to the common law rule to
which we have referred, disabling the wife to contract,
was, that if the husband abandoned her, and departed
into another country, without the intention of returning,
the law conferred on her the capacity of contracting and
suing as though she were sole.—*Arthur v. Broadnax*, 3
Ala. 357; *James v. Stewart*, 9 Ala. 855; *Mead v. Hughes*,
15 Ala. 148; *Roland v. Logan*, 18 Ala. 307. Or, when
the husband was civilly dead, outlawed, banished, im-
prisoned for life, &c.—the wife had the powers of a *feme
sole*.—14 Am. & Eng. Enc. of Law, 591. The reason for
engrafting the exception referred to on the disabilities of
the wife to contract at common law was, that without it,
oftentimes married women, whose husbands had re-
nounced their wives, families and country, ''could ob-
tain no credit on account of their husbands, for no pro-
cess could reach them; and they could not recover for a
trespass on their persons or their property, or for the
labor of their hands. They would be left wretched de-
pendents upon charity, or driven to the commission of
crimes to obtain a precarious support.''—*Gregory v. Paul*,
15 Mass. 31; *Mead v. Hughes, supra.* The same reasons,
it is contended for the appellee, apply to engraft an ex-
ception in favor of married women, in cases of the insan-
ity of their husbands, and for the further reason, that
the husband being insane, no marital right can be
affected, and every presumption of possible coercion is
removed out of the way,—citing Reeve's Domestic Rela-

tions, 138.    But, the  reasons  in the  two  cases  are not the same.   It has been held as the common law doctrine, "that the  husband  must  maintain the  wife, whenever there  is  a  separation  without  her  fault.    Insanity in either is  not a fault; therefore,  whether he or  she is insane, or  though both are,  he  must still  provide for her. If she is in  the  insane  asylum,  he  must support  her there.    He may be sued for necessaries there supplied to her.    Or, should he be  the one in the asylum, the wife, though sane, may charge him with  necessaries while he is there confined."—1 Bishop on Marriage & Divorce, § 565.

One is not civilly dead who is insane, nor,—if not removed beyond  his  State,—can  he  be said to  be where process may not be  served  on  him.   He  is responsible for contracts made before he became insane, and may be sued on them.    And that one insane  may  be the better taken care of, and  not  become  a  charge  on his family, the statutes of this State provide for the appointment of a  guardian of his  person  and  property.—Code, § 2390. So far as he is concerned, if a married man, the wife has no occasion to enter into a contract for  his support with an asylum.    The  same  reasons, then, for the  rule invoked as to the capacity of  the wife  to  contract, whose husband is civilly dead, or who has abandoned  his wife and family, and gone to reside in another state, with no intention of returning, do not apply to cases of the mere insanity of the husband.   In the American & English Encyclopedia of Law, it is said on this subject, that "as a general rule, the insanity, infancy, or other incapacity of  a husband does  not  affect the  personal status of the wife,"  and  the  compilers, while  stating  that there seemed  to  be  no  cases on  the  point, added, that "the proposition is an  easy  inference  from  the  well known principles on this subject."—14 Vol. 592.

Said section 2346 of the Code, touching  the  wife's power in this State to contract with the  written consent of her husband, is  in  derogation of  the  common  law, and it would seem that none of  the exceptions to which we have been referring, on the power of  the wife to contract at common law, have  anything  to  do  with  the statutes  of  this State on  the subject.    These  statutes seem to create their own exceptions to the  wife's power to contract.    In section 2348 it is  provided, that "if the

husband be *non compos mentis*, or has abandoned the wife, or is a non-resident of the State, or is imprisoned under a conviction for crime for a period exceeding two years, the wife may alienate her lands as if she were sole,'' and,—as to her personal property,—"if the husband is living apart from the wife, without fault on her part, or if he be of unsound mind, the wife may convey or dispose of such property in any manner as if she were sole.'' In the section providing that the wife may, with the consent of the husband expressed in writing, and under the conditions specified, enter into and pursue any lawful trade or business, as if she were sole, it is provided, that "the consent of the husband is not necessary, if he be of unsound mind, or has abandoned his wife, or is a non-resident of the State, or is imprisoned under conviction for crime.''—Section 2350. Again, it is provided, that "all property of the wife, held by her previous to the marriage, or to which she may become entitled after the marriage, in any manner, is the separate property of the wife, and is not subject to the liabilities of the husband," and that "the earnings of the wife are her separate property.''—Sections 2341, 2342. These statutes, regulating the rights and liabilities of husband and wife, were designed to furnish a complete system within itself, not dependent on common law rules for its enforcement. What the wife may do in case of the insanity of her husband, in respect to contracting and taking care of herself and her property, is carefully provided for in the statutes, and it would seem, on a common principle of interpretation, she is excluded from doing anything more in this respect than is authorized by statute. Her power to contract under the statute being specified and limited by the terms of the statute, she is restricted to the mode prescribed.—*Ashford v. Watkins*, 70 Ala. 160; *Scott v. Cotten, supra; Vincent v. Walker*, 93 Ala. 169. We have no occasion, therefore, in this case to apply any of the common law rules invoked in favor of the liability of the appellant, on the bond she gave to indemnify the asylum on the liability of her husband to it for his support. If in any case these rules may be made applicable to a married woman and her estate, they are wanting in application to the case in hand. The appellant was without authority to enter into any

[Pryor v. Davis, Admr.]

such obligation as the one here sued on, and it is not binding on her.

Reversed and remanded.

BRICKELL, C. J., and COLEMAN, J., dissenting.