## McCURRY v. HOOPER.

1. An inquisition, had by order of the orphans' court, to ascertain whether an individual is not *non compos mentis*, of the pendency of which he has no notice, is not evidence for any purpose, to affect the right of the individual so found to be insane, or any one claiming through him.
2. Insanity, is shown by the proof of acts, declarations, and conduct, inconsistent with the character, and previous habits of the party. The mere opinions of witnesses, of the sanity, or insanity, of a person, are not competent testimony, unless they are medical men, acquainted with the facts.
3. The defendant in the action of detinue, may show title in a third person.
4. The proper practice, is, to reject illegal testimony when offered, and not to admit it, subject afterwards to be excluded, when the court charges the jury ; as it may be impossible to eradicate an improper impression made upon them. An exception to this rule obtains, where a party proposes to [make testimony relevant, by evidence to be subsequently offered.

Error to the Circuit Court of Talladega.

This was an action of detinue, brought by the plaintiff, to recover of defendant, certain slaves.    On the trial, the plaintiff read in evidence a bill of sale, executed to him for the slaves, by George L. Patrick, bearing date the 9th January, 1845.    At the date of the instrument, the slaves were in possession of Patrick, and belonged to him.    The consideration expressed in the bill of sale, is $1,200.

The defence was, that at the date of the execution of the instrument, Patrick was *non compos mentis ;* and to show this, the defendant offered in evidence the transcript of a record from the orphans' court of St. Clair, from which it appears, that on the first day of January, application was made to the judge of the orphans' court, by the friends of George L. Patrick, for an inquisition of lunacy, to ascertain if said Patrick was not a lunatic, and incapable of managing his affairs ; but it does not appear who those friends were.    The judge of the orphans' court ordered a writ *de lunatico inquirendo*, to be issued to the sheriff of the county, command-

ing him to summon twelve citizens of the county, to make inquisition, if said Patrick be a lunatic, and incapable of managing his affairs. The sheriff summoned the jury, and on the 4th day of January, 1845, after being sworn, they found that Patrick was incapable of transacting his business, and was liable to be imposed on by any designing person, and certified this verdict, under their hands and seals. The sheriff returned the writ, with this verdict of the jury, to the orphans' court,

On the 6th day of January, 1846, the orphans' court appointed the defendant guardian of the person, and property of George L. Patrick—after reciting what the jury had done, and stating that they had certified that Patrick was incapable of transacting business, and was *non compos mentis*. The defendant gave bond with security, and letters of guardianship were issued to him. The defendant proved, that he obtained possession of the slaves under these proceedings in the orphans' court, and also introduced proof tending to show, that the object of the bill of sale, was to enable the plaintiff to run off the slaves, and to sell them for a compensation.

To the admission of each portion of this testimony, and to the whole of it, the plaintiff objected, but the court permitted it to go, reserving the admissibility of it, and its legal effect, until his charge to the jury should be given by consent of parties.

The defendant offered evidence tending to show, that the plaintiff had but very little property, and was indebted about $250. To the admission of this evidence the plaintiff objected. The only evidence of any consideration paid by plaintiff, was, that he had given his note to Patrick for $1,200 ; but there was a conflict of testimony whether he had or not.

The defendant also proved by witnesses, who were not physicians, that there had been, for about two years, a change in the appearance of Patrick. That he was about seventy-five years old ; that his eyes once had a natural appearance, but that now they had not. To this evidence the plaintiff objected, but his objection was overruled, and the plaintiff excepted.

The defendant also proved, that for some time previous to

McCurry v. Hooper.

the execution of the bill of sale, Patrick frequently cursed his son, said he cared nothing for the bible, and that he was as good as Christ. To this evidence the plaintiff objected, but his objection was overruled.

The plaintiff offered to prove by the subscribing witnesses to the bill of sale, that in their opinion, Patrick was sane at the time he executed it. The defendant objected to this proof; the objection was sustained, and the plaintiff excepted.

The court charged the jury, 1. That if they believed that the bill of sale was executed, merely to enable the plaintiff to run off, and sell the slaves for compensation, the plaintiff could not recover.

2. That although the proceedings in the orphans' court were not evidence of the insanity of Patrick, yet they were evidence of an outstanding title in the administrator of said Patrick, and if they believed said Patrick was insane at the time of executing the bill of sale, the plaintiff could not recover. To these charges, and to the refusal of the court to exclude from the jury, the proceedings of the orphans' court, the plaintiff excepted.

S. F. RICE, for the plaintiff in error.—The proceedings of the orphans' court were wholly void, because George L. Patrick had no notice of them. [5 Pickering, 217; 14 Mass. 222.]

The court erred in permitting the defendant to show the pecuniary condition of the plaintiff, to impeach the bill of sale.

The court should have permitted the subscribing witnesses to testify as to their opinion of the sanity of the testator.

The charges of the court were erroneous.

WOODWARD, contra.—There was no error in the ruling of the court.

The record of the orphans' court was competent evidence to enable the defendant to prove by other evidence, the insanity of the maker of the bill of sale.

The defendant could prove title in another, to show the

104

plaintiff had no title.   [8 Porter, 314 ; 9 Ib. 151 ; 15 Johns.
207 ; 14 Ib. 128.]   All the evidence tended to show that Patrick was insane.

The opinion of the subscribing witness, as to the sanity of
Patrick, was properly rejected.   [5 Ala. 241.]

DARGAN, J.—The first question we propose to examine,
is, was the record of the orphans' court of St. Clair, purporting to be an inquisition of lunacy, to ascertain if George L.
Patrick was sane, or *non compos mentis*, evidence for any
purpose ?

These proceedings purport to be had on the application of
the friends of Patrick.   The writ was issued, and the jury
certified that he was incapable to transact business ; that he
was liable to be imposed upon by designing persons ; and
that he was *non compos mentis*.   This verdict was returned
with the writ, and thereupon, a guardian was appointed, the
defendant in error, to take charge of his property and person.
It does not appear that George L. Patrick had any notice
whatever, of the time, and place, of making this inquisition ;
or that the jury saw him, or made any application, or effort
to see him.   It does not appear that he had any notice of the
application to the court for the writ, or that he had any notice
of the action of the court, on the return of the writ—but the
proceedings were *ex parte* merely; and by the judgment of the
orphans' court, the defendant in error is invested with the
control of the property, and person of Patrick.

I think it is a fundamental principle of justice, essential to
the rights of every man, that he shall have notice of any judicial proceeding that is about to be had, for the purpose of
divesting him of his property, or the control of it, that he may
appear and show to them, who sit in judgment on his rights,
that he has not lost them by the commission of a crime ; nor
should those rights be taken from him by reason of any misfortune.   That he has the right to appear before the jury,
and the court, and to show that he is not insane, that he,
and his property should not be put in charge of another is a
self-evident truth, and is denied by no legal authority.   [See
12 Ves. 444 ; *Ex parte* Cranmer, Stock on Lunacy, 100.]
This being his right, to appear, and defend himself, the ques-

tion is, what effect is the law to give to a proceeding that has denied this right?

In the case of Wait v. Maxwell, 5 Pickering, 219, this precise question came up, and the court held, that the proceeding of the court of probate, and the grant of letters of guardianship, were null and void, because the *non compos* had no notice of them. And in 14 Mass. R. 222, it was determined, that it was the right of an individual, against whom proceedings in the court of probate were taken, to appear and controvert the fact of insanity, and that an inquisition taken without notice, was void.

These authorities seem to be, in unison with the first principles of justice, and are not opposed by any authorities that have fallen under our observation. We therefore come to the conclusion, that the proceedings of the county court, in the nature of an inquisition, and determining said Patrick to be *non compos mentis*, are void; that they are not evidence for any purpose in the trial of the issues in this case, and should have been rejected, and not allowed to go to the jury.

This cause must be reversed for this error, and we will therefore lay down the rules of law, applicable to the evidence shown in the bill of exceptions, instead of examining each question seperately.

It is clearly the law, that in an action of detinue, the plaintiff must show title in himself, and an unlawful detainer by the defendant, consequently, if the bill of sale was obtained by fraud, or imposition, the plaintiff cannot recover; nor can he recover, if Patrick was insane at the time of its execution, for in either event it would not give the plaintiff a title, and the defendant could show that the title to the slaves was still in Patrick, or if he be dead, in his representatives. [See 8 Porter, 314; 14 John. Rep. 128; 15 Ib. 207; 11 Wendell, 58.]

When it becomes necessary to prove an individual insane, the usual evidence is, his acts, declarations, and conduct, inconsistent with his previous character, and habits, and leading to the conclusion of an aberation of the mind. The jury are to draw their conclusion from those acts, declarations, and conduct, whether the party is sane or not; but the mere opin-

ion of the witnesses, whether the individual is sane, or insane, is not evidence.    [5 Ala. Rep. 243.]

True, if the witnesses were medical men, acquainted with all the facts, they are permitted to give their opinion ; but the law limits the rule to medical men.    [Stock on Lunacy, 43 ; 2 Phil. Ev. 759, note 290.]

A subscribing witness to a will, is permitted to give his opinion, as to the sanity, or insanity, of the testator , but this is an exception to the rule, established rather on authority, than on any reason—and seems to be too well established to be departed from ; but this is the only exception to the rule. That on the question of sanity, the witnesses must speak to facts, declarations, acts, and conduct of the party, conducing to prove insanity, and are not permitted to give their opinion, merely, that the party is sane, or insane.

Before we dismisst his case, we will express our opinion of the practice that seems to be growing up, of permitting the whole evidence to go to the jury, and then for the judge, either in his charge, or before his final charge is given, to exclude, or take back from the jury, such portions of the evidence as is illegal.    After he has informed the jury, that the testimony of a particular witness, or some parts of it, is illegal, or that what they have heard read from a particular paper, or some part of it is illegal, is he able to say, that he has obliterated from the mind of each juror the effect or impression produced ?    May not the juror be unconsciously influenced by such impression, to some extent ?

The better practice, is, to pursue the well established rules, and when evidence is offered, and objected to, the court should then exclude it, or permit it to go to the jury.

It is true, that a departure from this rule is frequently necessary, upon a question of the relevanby of the testimony. But then it is usual for the party offering it, to state to the court, that he intends proving some other fact, specifying what that fact is, which will connect it, and make the proof relevant.    If he fail to do this—that is, to prove the connecting fact—the court should then reject the irrelevant proof. By this course of practice, we know that no impression is made on the mind of the jury by illegal evidence ; but under the practice adverted to, we do not, and in cases of doubt,

this impression made by illegal proof, may determine the verdict, and if so, an injury will result, that may not be remedied.

Let the judgment be reversed, and the cause remanded.