(85 South. 799)

**EDMONDSON et al. v. JONES. (7 Div. 986.)**

(Supreme Court of Alabama. Feb. 14, 1920.)

**1. Judgment ⬡443(1)—Relief only for fraud in procurement.**

Fraud, to be available as a predicate for relief against a judgment at law, must be fraud in its procurement.

**2. Insane persons ⬡71—Bill alleging fraud in procurement of sale of complainant's property held to state good ground for relief.**

A bill to recover property and for an accounting, averring that there was a conspiracy between defendants to fraudulently procure the sale of complainant's property to satisfy fictitious claims, and that the conspiracy and fraud was carried out through the probate court, resulting in a sale of the property to defendants for a mere fraction of its real value, without notice to the complainant at a time when he was incapacitated from protecting his own interest, being declared in such proceeding an insane person, and that the person appointed by the court, under Code 1896, § 2323, to protect his rights was a party to the fraud, *held* to state a good cause of action for relief against the judgment of the probate court.

**3. Equity ⬡239—Averments treated as true on demurrer.**

On demurrer to a bill, its averments of fact must be treated as true.

**4. Judgment ⬡475—Not subject to collateral attack except for fraud in procurement.**

Decrees of the probate court are not subject to collateral attack, and can only be impeached on a direct attack for fraud in their procurement.

**5. Trusts ⬡95—Persons acquiring property through fraud trustees ex maleficio.**

Persons acquiring property through fraud are chargeable as trustees ex maleficio, and a court of equity will require them to account for the rents, income, and profits thereof, as well as divest them of the legal title and reinvest it in the complainant.

**6. Equity ⬡76—Disability looked upon with indulgence on plea of laches in case involving fraud.**

Where fraud is clearly shown, the court will look with more than usual indulgence upon any disability under which the complainant may labor, in excusing him for delay in asserting his rights.

**7. Judgment ⬡456(1) — Person fraudulently adjudged insane to obtain his property held not guilty of laches.**

Where proceedings were fraudulently brought to have complainant declared insane for the fraudulent purpose of obtaining his property to satisfy fictitious claims, *held*, that complainant was not guilty of laches in not proceeding to set aside decrees of the court of probate for a number of years, where he wandered about the country from place to place in a demented condition, and his power of reasoning and memory were not completely restored until the year in which he filed his bill for relief.

**8. Executors and administrators ⬡211—Personal representative liable for property fraudulently obtained by decedent.**

Where a person during his lifetime received a part of complainant's property as the result of a fraud, and participated in and was a party to a conspiracy to deprive the complainant of his property, his estate may be held liable for the value of whatever property he received, in an action by the rightful owner for an accounting against the conspirators.

McClellan, J., dissenting.

Appeal from Circuit Court, Calhoun County; Hugh D. Merrill, Judge.

Bill by Jack Jones against W. J. Edmondson and Mrs. Lena Page, as administratrix of the estate of J. R. Castleberry. From a decree overruling demurrers to the bill, respondents appeal. Affirmed.

Knox, Acker, Dixon & Sterne, E. H. Hanna, and Willett & Walker, all of Anniston, for appellants.

As to the necessary proceedings in an inquisition of insanity, see sections 4345, 4350, 4351, 4447, 4408, Code 1907. The judgment was not subject to impeachment on collateral attack. 73 Ala. 173; 78 Ala. 206; 117 Ala. 533, 23 South. 783; 124 Ala. 238, 27 South. 297. All the jurisdictional facts either appear of record or were ascertained by the court. 71 Ala. 594; 74 Ala. 249; Id. 324; 78 Ala. 206; 29 Ala. 543; 125 Ala. 149, 28 South. 452, 82 Am. St. Rep. 230. The bill must be brought within two years. 57 Ala. 403.

T. C. Sensabaugh, of Anniston, and J. J. Mayfield, of Montgomery, for appellee.

The bill was properly filed, and was not subject to the demurrers. 8 Beav. 522; 141 Ala. 169, 37 South. 507, 109 Am. St. Rep. 26; 74 Ala. 604; 147 Ala. 524, 41 South. 133; 62 Ala. 426; 67 Ala. 542; 1 Hopk. Ch. 48; 1 Ves. Sr. 119; 47 N. H. 507, 93 Am. Dec. 467; 6 Johns. 235; 110 Mass. 542; 85 Ala. 527, 5 South. 209; 6 South. 612; 72 Ala. 1; 98 U. S. 61, 25 L. Ed. 91.

BROWN, J. The bill in this case was filed on the 10th day of December, 1917, by Jack Jones against W. J. Edmondson and Mrs. Lena Page, as administratrix of the estate of J. R. Castleberry, deceased, and seeks relief against a proceeding in the probate court of Calhoun county, through which, as the bill

⬡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

avers, the respondent Edmondson and Castleberry deprived the complainant of all his property without notice to him or an opportunity to be heard, and without compensation or resulting benefit to him. The ground upon which he seeks relief is that the several orders and decrees of said court looking to the sale of his property were but the carrying out of a conspiracy and concoction of fraud between the said Edmondson and Castleberry to deprive the complainant of his property and acquire it for the said Edmondson, or Edmondson and Castleberry.

To the end of showing such fraud as will justify the interference of a court of equity, the bill avers that, although the complainant was not at the time a resident of Calhoun county, a proceeding was instituted in the probate court of said county on, to wit, November 30, 1913, to have complainant adjudged insane; "that he had no notice of the said proceeding for inquisition of lunacy against him in said court of probate; that he was not present in said court at any time during any of said proceedings, and was not at said time (November 30, 1903), a resident of Calhoun county, Ala., but was, and had been since the early part of July, 1903, a resident of the county of Mobile; * * * that on the 30th day of June, 1904, at the time said J. R. Castleberry was appointed guardian of complainant by said court of probate, complainant was not a resident of Calhoun county, and was not an inmate of any hospital for the insane in Alabama;" and, further, "that on the 30th day of June, 1904, said J. R. Castleberry, now deceased, filed his petition in said court of probate setting forth that your complainant had been adjudged in said court of probate non compos mentis, and that he had property requiring the care of a guardian of the value of $250, and praying that he, said Castleberry, be appointed as such guardian; and on the same day (June 30, 1904), said J. R. Castleberry filed his bond in said court of probate in the sum of $500. as guardian of your complainant, and one of the sureties on said bond is the respondent W. J. Edmondson. And on the same day (June 30, 1904), the judge of said court of probate issued to said J. R. Castleberry letters of guardianship on the person, rights, and property of complainant;" that as such guardian there came into the hands of said Castleberry personal property belonging to the complainant of the value of $180 and real estate worth $3,000; that the annual rent of said real estate was $250; that thereafter the said Castleberry made application to the probate court for the sale of said property ostensibly for the payment of debts, and for the maintenance of complainant and his minor children; that said sale was ordered, and at the sale the respondent Edmondson became the purchaser of the land at and for the sum of $250; that the personal property was sold for $22.40, Edmondson and Castleberry becoming the purchasers of all such personal property, except a plow and crowbar sold to one Aderhold for 50 cents, and a scything cradle sold to one Wilkins for $1.10. It is also shown that immediately after said Castleberry procured a confirmation of the sale of said property he proceeded to make a final settlement of his guardianship. The bill further avers:

"Your complainant avers and charges that said J. R. Castleberry did not file said application to sell said lands as his guardian for the purpose of paying debts, and for the maintenance of your complainant and his children, as alleged in said application; no debts in fact existed except as herein stated, and the rents of said lands and said personal property was sufficient to pay said debts and to support complainant, had there been a desire or intention to provide for his maintenance; *but said Castleberry, as guardian, fraudulently colluded with said W. J. Edmondson and fraudulently formed and entered into the conspiracy with him to procure the decree of said probate court to sell said lands for the purpose of enabling said Edmondson to purchase said lands at public outcry for the fictitious claim of a debt and for less than their value, as complainant avers was done. And said A. M. Morgan, as guardian ad litem, fraudulently failed to make any defense to said application to sell said lands, and failed to require proof of the existence of debts, offered no evidence on said hearing of said application, and failed to even be present and cross-examine the witnesses on behalf of said petitioning guardian, but left the whole proceedings for the sale of said lands to the management and control of counsel selected and employed by said petitioning guardian, J. R. Castleberry.* And complainant avers that the said decree of said court of probate for the sale of said lands, and the sale thereof thereunder, *was the result of said fraudulent collusion between said J. R. Castleberry, guardian, and said W. J. Edmondson, pretended creditor, as aforesaid, and of the said fraudulent conduct on [of] the said A. M. Morgan, guardian ad litem, in permitting said lands to be sold by making no defense to said application for sale, as could have been done in the ordinary and proper discharge of duty.*" (Italics supplied.)

"That a court of equity possesses jurisdiction to relieve against fraud in judicial proceedings is everywhere a universally recognized principle. The judgment or decree against which relief is invoked, however, must have been procured by fraud, either in its original rendition, or by a subsequent fraudulent alteration; and this fraud must, in a sense, be shown to be actual and positive. When this is clearly established by satisfactory proof, it is honorable to our system of equity jurisprudence that such infection of fraud is made to vitiate every transaction, and the solemn judgments of courts are no exception to the salutary rule." Cromelin v. McCauley et al., 67 Ala. 542; Evans v. Wilhite, 167 Ala. 587, 52 South. 845; Evans v. Wilhite, 176 Ala. 287, 58 South. 262; Curry v. Peebles, 83 Ala. 225, 3 South. 622; Mitchell v. Rice, 132 Ala. 126, 31 South. 498;

Kerr on Fraud and Mistake, 352, 353; Galatian v. Erwin, Hopk. Ch. (N. Y.) 48.

[1, 2] The averments of the bill clearly bring this case within the principle that fraud, to be available as a predicate for relief against a judgment at law, must be fraud in the procurement of the judgment. The bill, in terms, avers that there was a concoction or conspiracy between the respondent Edmondson and Castleberry to fraudulently procure the sale of complainant's property to satisfy fictitious claims, as a means of depriving complainant of his property and procuring it for said Edmondson and Castleberry, and that this conspiracy and fraud was carried out through the probate court, resulting in a sale of the property to said Edmondson and Castleberry for about one-twelfth of its real value, without notice to the complainant, and at a time when complainant was incapacitated from protecting his own interest; the said Castleberry at the time acting in the fiduciary capacity of guardian, and posing as complainant's representative.

The bill further avers that Morgan, who was appointed by the court guardian ad litem to protect the interest of complainant in the proceeding, was a party to the fraud and in collusion with Edmondson and Castleberry, and avers, in terms:

"Said A. M. Morgan, as guardian ad litem, fraudulently failed to make any defense to said application to sell said lands, and failed to require proof of the existence of debts, offered no evidence on said hearing of said application, and failed even to be present and cross-examine the witnesses examined on behalf of said petitioning guardian, but left the whole proceeding for the sale of said lands to the management and control of counsel selected and employed by said petitioning guardian, J. R. Castleberry."

The statute then in force (Code 1896, § 2323) provides:

"On the filing of an application for the sale of property of the ward, other than debts and choses in action, whether for the payment of debts or maintenance of a person of unsound mind, or for the maintenance and education of a minor, or for reinvestment, the court must appoint a day for the hearing, not less than twenty nor more than thirty days thereafter, and must appoint a suitable and competent person, not of kin or counsel to the petitioner, as guardian ad litem to represent the ward, who must put in issue the facts stated in the application and require proof thereof."

This statute first appeared in the Code of 1896, and was not in force at the time of the decision of this court in the case of Daughtry v. Thweatt, 105 Ala. 615, 16 South. 920, 53 Am. St. Rep. 146, and what it said in that case with reference to the appointment of a guardian is not apt as an authority here; that case being decided before this statute became the law.

[3] These averments, if true, and on demurrer they must be so treated, not only show fraud offending the rights of the complainant, but constitute a fraud upon the law and the probate court, and are sufficiently averred as a predicate for relief against the proceedings in question. Smith et al. v. Smith et al., 153 Ala. 517, 45 South. 168. To say that such fraud does not warrant relief in a court of equity would be to cast dishonor upon our system of equity jurisprudence. Evans v. Wilhite, 176 Ala. 287, 58 South. 262; Hardeman v. Donaghey, 170 Ala. 362, 54 South. 172; Humphreys v. Burleson, 72 Ala. 1; Mock's Heirs v. Steel, 34 Ala. 198, 73 Am. Dec. 455; U. S. v. Thockmorton, 98 U. S. 61, 25 L. Ed. 93; Hall v. Pegram, 85 Ala. 529, 5 South. 209, 6 South. 612; French v. Shotwell, 6 Johns. Ch. (N. Y.) 235; Currier v. Esty, 110 Mass. 543; Hibbard v. Eastman, 47 N. H. 507, 93 Am. Dec. 467; Bomesly v. Powell, 1 Vesey, Sr., 119, 120; s. c., 1 Vesey, Sr., 285; Galatian v. Erwin, Hopk. Ch. (N. Y.) 48.

This case and those cited in support of the conclusion we have stated are easily distinguishable from De Soto Co. v. Hill, 188 Ala. 667, 65 South. 988, where the court declined to interfere because of newly discovered evidence, and the case of Hendley v. Chabert, 189 Ala. 258, 65 South. 993, where relief was denied because of failure of the party complaining to acquit himself of negligence in presenting his defense at law. Here the complainant was not a party to the proceeding, had no notice thereof, and his misfortune incapacitated him to care for his own interest; he was non compos mentis. The bill shows that respondent Edmondson and Castleberry were not only practicing a fraud on complainant in procuring a sale of his property, but were practicing a fraud on the court, and merely using it as a cloak or cover to hide their covinous purpose to defraud the complainant of his property.

[4] Copies of the proceedings and decrees of the probate court relating to the sale of the complainant's property are made exhibits to the bill, and while there are some irregularities in them, yet, on the showing made by the bill, the decrees of the court are not subject to collateral attack, and can only be impeached on a direct attack for fraud in their procurement. Knabe v. Rice, 106 Ala. 516, 17 South. 666.

The bill in this case is filed against one of the original parties to the fraud and the personal representative of the other, and shows that each of the parties, Edmondson and Castleberry, acquired a part of the property by purchase at the sale under the decree of the probate court.

"Whenever the legal title to property, real or personal, has been obtained through actual

fraud, misrepresentation, concealments, or through undue influence, duress, taking advantage of one's weakness .or necessities, or through any other similar means or under any other similar circumstances which render it unconscientious for the holder of the legal title to retain and enjoy the beneficial interest, equity impresses a constructive trust on the property thus acquired in favor of the one who is truly and equitably entitled to the same, although he may never perhaps have had any legal estate therein; and a court of equity has jurisdiction to reach the property in the hands of the original wrongdoer or in the hands of a subsequent holder, until a purchaser of it in good faith and without notice acquires a higher right, and takes the property relieved of· the trust." Kent v. Dean, 128 Ala. 600, 30 South. 543; Smith v. Smith et al., 153 Ala. 504, 45 South. 168.

[5] Under the doctrine of the foregoing cases, the respondent Edmondson and Castleberry, by acquiring property through fraud, as ,. averred in the bill, are chargeable as trustees ex maleficio, and a court of equity will require them to account for the rents, income, and profits thereof, for the use and benefit of complainant, as well as divest them of the legal title and reinvest it in the complainant.

[6, 7] To avoid the imputation that complainant is guilty of laches in respect to filing the bill, it avers that within a few months after complainant's commitment to the hospital for the insane he escaped therefrom, and has not since been confined therein; but that for the past eight or ten years, being still in a demented condition, he has wandered from place to place, and about two years before the filing of the bill, while in Meridian, Miss., he partly recovered his power of reasoning and memory, and from that time gradually improved until the early part of the year 1917, when he was completely restored to sanity, and in November, 1917, applied to the probate court of Calhoun county for an order revoking the order of the court adjudging him insane, which order was granted November 4, 1917, and the bill in this case was filed, within less than 30 days after such order was entered, against one of the original parties to the fraud and the personal representative of the other. It is a familiar rule that where fraud is clearly shown the court will look with more than usual indulgence upon any disability under which the complainant may labor in excusing him for delay in asserting his rights. In view of these averments it cannot be said that this complainant was guilty of laches in respect to the filing of this bill. Ala. Coal & Coke Co. v. Gulf Coal & Coke Co., 171 Ala. 544, 54 South. 685; Heflin v. Ashford, 85 Ala: 125, 3 South. 760.

[8] It being shown that Castleberry during his lifetime. received a part of the property. as the result of the alleged fraud, and that he participated in and was a party to the conspiracy to deprive the complainant of his property, his estate may be held liable for the value of whatever property he received, if the fraud charged in the bill is established by the proof; and hence the bill is not subject to the objection that there is a misjoinder of parties defendant.

The bill was not subject to the objections pointed out in the demurrers, and the decree overruling the demurrers must be affirmed.

Affirmed.

ANDERSON, C. J., and SAYRE, and SOMERVILLE, JJ., concur.

GARDNER and ·THOMAS, JJ., concur in conclusion only, for reasons stated in opinion of Justice THOMAS, infra.

McCLELLAN, J., dissents, holding that the bill was subject to demurrer, and the decree rendered should· therefore be reversed.

THOMAS, J. (concurring). My concurrence in the conclusion announced is rested on the considerations hereinafter set out, in which Justices SAYRE and GARDNER are in agreement to the extent indicated.

This is a direct attack in chancery on an alleged proceeding in the probate court on inquisition of lunacy, appointment of guardian, and sale or disposition of the ward's properties by such guardian; and the cancellation of the deed to the purchaser at such sale and deed by such purchaser to a subpurchaser is prayed.

It is averred that complainant, seized of the land in controversy, "was of unsound mind"; that "inquisition proceedings provided for by article 2, c. 92, of the Code, * * * were had * * * in the court of probate of Calhoun county, and the jury summoned found by their verdict on the 30th day of November, 1903, that * * * complainant was; of unsound mind"; that he was placed in a hospital for insane, where he remained only a short time; that on June 30, 1904, J. R. Castleberry (respondents' intestate) was appointed by and qualified .in said court of probate as complainant's guardian, and on June 29, 1905, procured an order for the sale of his lands, respondent W. J. Edmondson becoming the purchaser at such sale. The bill exhibits the petition for letters of guardianship, bond made and letters issued pursuant thereto, petition for sale of the land and testimony taken in support thereof, the guardian's deed to the purchaser, and the latter's deed .to a subpurchaser of a small tract of said land.

It was also alleged that the petition for the sale was false, as specifically charged; that there was no accounting by the guardian for certain of the personal properties of complainant; that the latter was not duly represented by a guardian ad litem; and that there was fraud and collusion between

the guardian and the purchaser, resulting in a sale of the land for less than its true value.

The amendment to the original bill, pleading lack of notice and opportunity to be heard in the alleged proceedings in the probate court (for inquisition of lunacy and sale of said land), was that complainant was not present in said court at any time during any of said proceedings, "and was not at said time (November, 1903), a resident of Calhoun county, Ala., but was, and had been since the early part of July, 1903, a resident of the county of Mobile, Ala., and that said court of probate was without jurisdiction and had no power or authority to hear and determine said inquisition of lunacy against complainant"; that on June 30, 1904, when "J. R. Castleberry was appointed guardian of complainant by said court of probate, complainant was not a resident of Calhoun county, Ala., and was not an inmate of any hospital for the insane in Alabama." Thus was not negatived the fact that at the time of the application for inquisition of lunacy and the verdict of the jury thereon, or of the sale of his lands, complainant was confined in a hospital or asylum without the state. Code 1896, § 2261; Code 1907, § 4351.

The prayer of the bill as first filed (December 10, 1917), was for an accounting between complainant and respondents, to ascertain (1) the amount due complainant by the administratrix of the estate of J. R. Castleberry, deceased, as guardian aforesaid, for personal properties belonging to complainant's estate and for rents of his lands, received or that by due diligence should have been received by said guardian, and of which no account was rendered in the court of probate; and (2) the amount due complainant by W. J. Edmondson as rents and profits of said lands since the alleged purchase, the value of the timber cut and removed therefrom, and the value of the two acres of said lands sold and conveyed by Edmondson to Hightower. It was further prayed that a decree be rendered in favor of complainant against said Edmondson, as an individual and as surety on said guardian's bond, and against the said Page, as administratrix of the estate of J. R. Castleberry, deceased, for the amounts so found to be due from them, and from each of them respectively; that the orders and decrees of said court of probate directing the lands to be sold and confirmation thereof be declared fraudulent and void; that the deed from Castleberry, as guardian, to W. J. Edmondson be declared void and ordered delivered up and canceled of record in the court of probate as a cloud on complainant's title; and that decree be rendered against Edmondson for possession of all the lands indicated and for appropriate process against him and tenants as may be necessary to place complainant in quiet and peaceable possession of said lands. On March 7, 1918, the bill and prayer were amended to the effect that the order directing the sale of the land by the probate court be declared void, and that all orders and proceedings in said court, made under said petition for sale of the land and personal property, be annulled, vacated, and set aside. Lastly, on June 3, 1918, the bill was amended by averring the insufficiency of the inquisition of lunacy and proceedings thereunder in the probate court of Calhoun county for lack of notice and opportunity to be heard. The prayer was so amended as that the inquisition of lunacy against complainant, the appointment of the guardian, and proceedings for the sale of the land be declared void and of no effect, on the ground that complainant had no notice of and was not present at said inquisition; that the appointment of Castleberry as his guardian be held and declared void, for the reason that complainant was not at the time of the appointment (June 30, 1904), a resident of Calhoun county or an inmate of any hospital for the insane in Alabama; and that said order of court of probate for the sale of his lands, the sale thereof, and all proceedings thereunder be held and declared null and void and of no effect, for the reason that "the time for the hearing of said petition for sale, to wit, the 29th day of June, 1905, was not published, and the notice of said hearing was not given by publication for three successive weeks, as required by statute."

The purchaser at such sale and surety on the guardian's bond (Edmondson) and the administratrix of the estate of the deceased J. R. Castleberry (Lena Page), being made respondents, demurred to the bill on many grounds, among them that there was a misjoinder of parties as to recovery of the land; that complainant had an adequate remedy at law; which demurrers were overruled. Respondents, appealing, severed in assignment of errors.

The general rule is that inquisitions of lunacy must be held at or near the residence of the party whose sanity is being tried. This rule of jurisdiction is declared in sections 4345, 4346, and 4351 of the Code of 1907 (same as sections 2255, 2256, 2261, respectively, of the Code of 1896). The expressions "residing in the county," in sections 4345, 4346 (2255, 2256), and "is a resident of the county," in section 4351 (2261), must be held to mean the county where the person of unsound mind actually resided when the proceedings were instituted against him, or, if in an asylum, in the county where he last resided before he was taken to the asylum. 22 Cyc. 1122.

A question of controlling importance is, Did the probate court of Calhoun county have jurisdiction of the person of complainant, Jack Jones, to adjudge him to be non

compos mentis, and to appoint Castleberry his legal guardian? It is only by an affirmative answer to this inquiry that the further question as to the sufficiency of the petition for the sale of the lands and the sufficiency of the averment of collusion and fraud may necessarily be considered.

Probate courts originally had no jurisdiction to determine or adjudge a person to be a lunatic. Such jurisdiction was vested by statute in such court as a special tribunal consisting of the judge of probate and a jury summoned in the manner prescribed by law. Laughinghouse v. Laughinghouse, 38 Ala. 257; 11 Am. & Eng. Encyc. of Law. (1st Ed.) 114 et seq. The old statute conferred the jurisdiction upon the orphans' court to order the sheriff to hold the inquisition. Aikin's Dig. p. 250, § 25, and notes; Clay's Dig. p. 302, § 30; Craft v. Simon, 118 Ala. 625, 632, 24 South. 380. Later, this jurisdiction was conferred by statute (Code 1852, § 2750, and subsequent Codes) on orphans' courts and courts of probate as a statutory and summary remedy. Laughinghouse v. Laughinghouse, supra.

Of presumption in favor of judgments of courts of general jurisdiction, it has been declared that, except as to matters and persons falling within the scope of that general jurisdiction, there is no presumption in favor of their judgments; that is, when the proceeding is special and statutory, outside of that general scope, either as to subject or person, the presumption ceases, and the record must show a compliance with the special authority by which the extraordinary jurisdiction is exercised. Galpin v. Page, 3 Sawy. 93, Fed. Cas. No. 5206; Pettus, Adm'r, v. McClannahan, 52 Ala. 55, 59; Smith v. Alexander, 148 Ala. 554, 42 South. 29; Goodman v. Winter, 64 Ala. 410, 430, 431, 38 Am. Rep. 13; Wyman v. Campbell, 6 Port. 219, 244, 31 Am. Dec. 677; Eslava v. Lepretre, 21 Ala. 504, 522, 56 Am. Dec. 266; Robinson v. Allison, 97 Ala. 596, 604, 12 South. 382, 604; Robinson v. Starnes, 137 Ala. 438, 34 South. 686; McLendon v. American Freehold Land Mortg. Co., 119 Ala. 518, 24 South. 721. In Craft v. Simon, 118 Ala. 625, 637, 24 South. 380, 383, the court said, on the subject of jurisdictional averment in proceedings for inquisition, that—

"Upon the filing of a proper petition, *and the service of summons and notice in the manner prescribed, the jurisdiction of the court attaches, and its conclusions are not void on collateral attack.* Jurisdiction having attached, the failure of the decree to ascertain that the jurisdictional facts had been proven would not affect the validity of the decree. Pollard v. Amer., etc., Mortg. Co., 103 Ala. 289, and authorities cited. Errors and irregularities must be corrected by direct appeal or writ of certiorari. Any other view would greatly embarrass guardians appointed by the court in such cases, and deter purchasers at sales, though ordered by the court, and would not be reconcilable with well-settled principles applying in cases in which there does not seem to be any valid reason for a distinction." (Italics supplied.)

It is interesting to note that Lord Chancellor Erskine, in 1806, declared that a writ of notice must be served on one who is made the subject of a commission of lunacy; that the right to be present at the execution of that commission and to be heard before condemnation was "his privilege." Ex parte Cranmer, 12 Vesey, Jr., 444, 455. This natural right found expression in the due process clauses of the Constitution of the United States (Amendments 5 and 14) and in the several Constitutions of Alabama (Const. 1819, art. 1, § 10; 1861, art. 1, § 10; 1865, art. 1, §§ 7, 14; 1868, art. 1, § 8; 1875, art. 1, §§ 7, 8, 14; 1901, art. 1, §§ 6, 7, 13). Early decisions of our courts are to the effect that proceedings for inquisition of lunacy and appointment of a guardian of a non compos without notice are coram non judice and void. McCurry v. Hooper, 12 Ala. 823, 46 Am. Dec. 280; Eslava v. Lepretre, 21 Ala. 504, 56 Am. Dec. 266; Fore v. Fore, 44 Ala. 478, 483; Moody v. Bibb, 50 Ala. 245, 247; Ex parte Trice, 53 Ala. 546; Molton v. Henderson, 62 Ala. 426, 430.

*Interpretation by the Supreme Court of the United States of due process of law (the inhibition against the national government in the Fifth Amendment to the Constitution and against the state in the Fourteenth) is made in cases where there was not sufficient notice or opportunity to be heard provided by law or given to those assailed in property or person in judicial proceedings.* In Windsor v. McVeigh, 93 U. S. 274, 277, 278 (23 L. Ed. 914), where the proceedings were instituted under the Act of Congress of July 17, 1862, c. 195, 12 Stat. 589, "to suppress insurrection, to punish treason and rebellion, to seize and confiscate the property of rebels," etc., Mr. Justice Field said:

"Wherever one is assailed in his person or his property, there he may defend, for the liability and the right are inseparable. This is a principle of natural justice, recognized as such by the common intelligence and conscience of all nations. A sentence of a court pronounced against a party without hearing him, or giving him an opportunity to be heard, is not a judicial determination of his rights, and is not entitled to respect in any other tribunal.

"That there must be notice to a party of some kind, actual or constructive, to a valid judgment affecting his rights, is admitted. Until notice is given, the court has no jurisdiction in any case to proceed to judgment, whatever its authority may be, by the law of its organization, over the subject-matter. But notice is only for the purpose of affording the party an opportunity of being heard upon the claim or the charges made; it is a summons to him to appear and speak, if he has anything to say, why the judgment sought should not be rendered. A denial to a party of the benefit of a notice

would be in effect to deny that he is entitled to notice at all, and the sham and the deceptive proceeding had better be omitted altogether."

The case of Pennoyer v. Neff, 95 U. S. 714, 733 (4 L. Ed. 565), turned upon the validity of a judgment in a state court, under which defendant claimed to have acquired Neff's land by a sheriff's deed made upon a sale of the property under execution issued on the judgment in Mitchell v. Neff. The defendant in judgment was a nonresident of Oregon and service was sought to be perfected by publication, according to the state statute. The court said:

"Since the adoption of the Fourteenth Amendment to the federal Constitution, the validity of such judgments may be directly questioned, and their enforcement in the state resisted, on the ground that proceedings in a court of justice to determine the personal rights and obligations of parties over whom that court has no jurisdiction do not constitute due process of law. Whatever difficulty may be experienced in giving to those terms a definition which will embrace every permissible exertion of power affecting private rights, and exclude such as is forbidden, there can be no doubt of their meaning when applied to judicial proceedings. They then mean a course of legal proceedings according to those rules and principles which have been established in our systems of jurisprudence for the protection and enforcement of private rights. To give such proceedings any validity, there must be a tribunal competent by its constitution—that is, by the law of its creation—to pass upon the subject-matter of the suit; and, if that involves merely a determination of the personal liability of the defendant, he must be brought within its jurisdiction by service of process within the state, or his voluntary appearance." Grannis v. Ordean, 234 U. S. 385, 34 Sup. Ct. 779, 58 L. Ed. 1363; American Land Co. v. Zeiss, 219 U. S. 47, 31 Sup. Ct. 200, 55 L. Ed. 82; Arndt v. Griggs, 134 U. S. 316, 10 Sup. Ct. 557, 33 L. Ed. 918; Gill v. More, 200 Ala. 511, 76 South. 453; Adams v. Walsh, 200 Ala. 140, 75 South. 888; Evans v. Evans, 200 Ala. 329, 76 South. 95, 96.

Recent decisions by the Supreme Court of the United States on the validity of statutes affecting the individual and property rights, without ample provision for notice to the owner of the property being dealt with, are to the effect that it is not enough that such owner may by chance have notice, or may, as a matter of favor, have a hearing, but the requirement of the law of the land is that the statute must require due notice, give the right to a hearing and an opportunity to be heard (Security Trust Co. v. Lexington, 203 U. S. 323, 333, 27 Sup. Ct. 87, 51 L. Ed. 204); that notice given, as a matter of grace or favor, of such proposed judicial proceedings was not sufficient (Central of Georgia Ry. Co. v. Wright, 207 U. S. 127, 138, 28 Sup. Ct. 47, 52 L. Ed. 134, 12 Ann. Cas. 463; Roller v. Holly, 176 U.

S. 398, 409, 20 Sup. Ct. 410, 44 L. Ed. 520; Louisville & N. R. Co. v. Stockyards Co., 212 U. S. 132, 144, 29 Sup. Ct. 246, 53 L. Ed. 441; Coe v. Armour Fertilizer Works, 237 U. S. 413, 424, 425, 35 Sup. Ct. 625, 59 L. Ed. 1027; Stuart v. Palmer, 74 N. Y. 183, 30 Am. Rep. 289; York v. Texas, 137 U. S. 1521, 11 Sup. Ct. 9, 34 L. Ed. 604; Rees v. Watertown, 19 Wall. 107, 123, 22 L. Ed. 72). Thus, due process of law presupposes the existence and averment of jurisdictional facts, the right to be heard provided by law, a hearing accorded or opportunity to be heard given pursuant to such notice, and a judgment entered in accordance with such notice and hearing. Subject to these fundamental conditions prescribed in the systems of law established by civilized countries, all state laws "regulating procedure, evidence, and method of trials" have been sustained by the Supreme Court of the United States as being consistent with "due process of law." Iowa Cent. Ry. v. Iowa, 160 U. S. 389, 16 Sup. Ct. 344, 40 L. Ed. 467.

The statute of Alabama provides that an inquisition may be had without notice to a person alleged to be of unsound mind when such person "is at the time of the application confined in an hospital or asylum within or without the state." The proceedings in the probate court directly attacked by instant suit were had against complainant and his properties in the probate court of Calhoun county, Ala. Code 1896, § 2255 et seq.; Code 1907, § 4345 et seq. The act of December 23, 1868, provided that an unfortunate resident citizen who shall have become non compos mentis and be "confined in an asylum without (beyond) the limits of this state" may, on application for inquisition of lunacy by the husband, wife, parent, or other relative of such person, be declared non compos mentis without personal notice upon the appointment of a guardian ad litem. Gen. Acts 1868, p. 433. This act, carried into the Code of 1876 as section 2761, was amended by the act of February 14, 1885 (Gen. Acts 1884-85, p. 118), so that the application might be by any relative of the person to be proceeded against, when such person was "confined in an hospital or asylum within or without the state," and insanity adjudged without notice to such person on the appointment of a guardian ad litem; and as so amended was given a place in the Code of 1886 as section 2396, whereby the application may be by any of the relatives or friends of any person alleged to be of unsound mind.

Does this statute afford due process of law to a person so adjudged non compos mentis without notice, upon the appointment by the probate court of a guardian ad litem to represent and defend for him, when such person is, at the time of the application, confined in an asylum or hospital within or

without the state? Code 1886, § 2396; Code 1896, § 2261; Code 1907, § 4351.

The question in Simon v. Craft, 182 U. S. 427, 435, 21 Sup. Ct. 836, 839 (45 L. Ed. 1165), and Craft v. Simon, 118 Ala. 625, 24 South. 380, was the effect of an attempted foreclosure of a mortgage, guardian's trust deed, on land of an alleged non compos mentis (Mrs. Simon), executed May 11, 1889, raised by a statutory action of ejectment. While section 2396 of the Code of 1886, with other germane Alabama statutes, was set out in the footnote to the opinion of Mr. Justice White in the case, the validity of the provision for inquisition without notice, contained in said section 2396, was not considered by the Supreme Court of the United States. The justice said:

"The contention now urged is that notice imports an opportunity to defend, and that the return of the sheriff conclusively established that Mrs. Simon was taken into custody and was hence prevented by the sheriff from attending the inquest or defending through counsel if she wished to do so in consequence of the notice which she received. It seems, however, manifest—as it is fairly to be inferred the state court interpreted the statute—that the purpose in the command of the writ, 'to take the person alleged to be of unsound mind, and, if consistent with his health or safety, have him present at the place of trial,' was to enforce the attendance of the alleged non compos, rather than to authorize a restraint upon the attendance of such person at the hearing. In other words, that the detention authorized was simply such as would be necessary to enable the sheriff to perform the absolute duty imposed upon him by law of bringing the person before the court, if in the judgment of that officer such person was in a fit condition to attend, and hence it cannot be presumed, in the absence of all proof or allegation to that effect, that the sheriff in the discharge of this duty, *after serving the writ upon the alleged lunatic* [italics supplied], exerted his power of detention for the purpose of preventing her attendance at the hearing, or of restraining her from availing herself of any and every opportunity to defend which she might desire to resort to, or which she was capable of exerting. The essential elements of due process of law are notice and opportunity to defend. In determining whether such rights were denied we are governed by the substance of things and not by mere form. Louisville & Nashville Railroad Co. v. Schmidt, 177 U. S. 230. We cannot, then, even on the assumption that Mrs. Simon was of sound mind and fit to attend the hearing, hold that she was denied due process of law by being refused an opportunity to defend, when, *in fact, actual notice was served upon her of the proceedings.*" (Italics supplied.)

And the fact of notice is shown by the sheriff's return by "handing her a copy of said writ, * *, * and when, as we construe the statute, if she had chosen to do so, she was at liberty to make such defense as she deemed advisable." Simon v. Craft, 182 U. S. 427, 428, 436, 21 Sup. Ct. 836, 839

(45 L. Ed. 1165); Frank v. Mangum, Sheriff, 237 U. S. 309, 342, 35 Sup. Ct. 582, 59 L. Ed. 969.

In approving the statutes of this state (Code, § 4348 [2258] [2393] [2758] [3190] [2751]) providing, among other things, that the judge of probate "must also issue a writ directed to the sheriff, to take the person alleged to be of unsound mind, and, if consistent with his health or safety, have him present at the place of trial," the court, in Simon v. Craft, supra, said:

"It is not seriously questioned that the Alabama statute provided that notice should be given to one proceeded against as being of unsound mind of the contemplated trial of the question of his or her sanity. Indeed, it would seem that it was not urged before the Supreme Court of Alabama that the statutes of that state failed to provide for notice, and that court assumed in its opinion that no question of that character was presented. As a matter of fact, a copy of the writ which issued and which embodied a notice of the date of the hearing of the proceedings in lunacy is shown by the record to have been actually served on Mrs. Simon. As early as 1870 the Supreme Court of Alabama, in Fore v. Fore, 44 Ala. 478, 483, held that the service of the writ upon a supposed lunatic was the notice required by the statute and brought the defendant into court, and that if he failed to avail of such matters of defense as he might have, he must suffer the effect of his failure to do so." 182 U. S. 434, 435, 21 Sup. Ct. 839 (45 L. Ed. 1165).

Under article 2, c. 57, of the Code of 1896 (the statute of force when the attempted inquisition was had and guardian appointed of complainant and his estate), it is provided, among other things, that "a guardian for a person alleged to be of unsound mind, residing in the county, must not be appointed until an inquisition has been had and taken as hereinafter directed" (section 2256); that the proceedings therefor may be had upon the petition of "any of the relatives or friends" of such person, setting forth the facts and name, sex, age, and residence of such person, supported by affidavit that petitioner believes the facts therein stated to be true, and "the court of probate of the county in which such person alleged to be of unsound mind resides, must appoint a day, not more than ten days from the presentment of such petition, for the hearing thereof" (section 2257); that the judge of probate must issue a writ for the summoning of a disinterested jury, subpoena witnesses, and also "issue a writ directed to the sheriff to take the person alleged to be of unsound mind, and, if consistent with his health or safety, have him present at the place of trial" (section 2258). If the verdict of the jury is to the effect that the facts alleged in the petition are true, and that such person is of unsound mind, "the court must cause the petition and all the proceedings thereon to be recorded, and appoint a suitable guardian of such per-

son" (section 2260); and when "the person alleged to be of unsound mind is a resident of the county, and is at the time of the application confined in an hospital or asylum within or without the state, the inquisition may be had and taken without notice to him" (Code 1896, § 2261).

Taking account of our cases in proceedings for inquisitions in which due process of law has been considered, it is observed of Fore v. Fore, supra, that the defendant in petition was held to have been notified by the "writ of arrest * * * duly served upon him"; in Moody v. Bibb, supra, the appointment of a guardian was held void by reason of failure to bring before the court "in any manner" the non compos, who "had no notice whatever of the proceeding to declare him a lunatic"; in Ex parte Trice, supra, the defendant had been arrested and was at large on bond at the time the order affecting her sanity was made, it being held that such proceeding was without authority of law—that "no man can be pronounced insane, deprived of his liberty, or of his property, and its control, and subjected to the dominion of others, by any judicial proceeding of which he had not notice, and the right and opportunity of being heard in opposition to it."

In the Laughinghouse Case, 38 Ala. 257, the inquisition had before the sheriff, in the absence of the probate judge, was declared coram non judice. In Molton v. Henderson, supra, where the attempted inquisition of lunacy had in the probate court was without personal notice to the alleged non compos, the appointment of a guardian and all proceedings by such guardian for a sale of his lands were declared void. Of this case it is interesting to note that the petition contained the averment that it was filed by a brother of the person sought to be adjudged non compos mentis, and that at the time of such proceeding the defendant in the petition was an inmate of the lunatic asylum at Columbia, S. C.

In McCurry v. Hooper, supra, Mr. Justice Dargan declared of the purported inquisition of lunacy directed against one Patrick that the application therefor was by "friends," without disclosing who were the friends. The record showed the writ was issued, the jury certified Patrick was non compos mentis, and a guardian was appointed; but it failed to disclose that Patrick had notice of the time and place of the inquisition or that the jury saw him. On such ex parte proceeding in the orphans' court the guardian was invested with control of the property and person of said Patrick. Of this procedure, in a suit in detinue to recover property disposed of by such alleged guardian, the court said:

"It is a fundamental principle of justice, essential to the rights of every man, that he shall have notice of any judicial proceeding that is about to be had, for the purpose of divesting him of his property, or the control of it, that he may appear and show to them who sit in judgment on his rights that he has not lost them by the commission of a crime; nor should those rights be taken from him by reason of any misfortune. That he has the right to appear before the jury, and the court, and to show that he is not insane, that he and his property should not be put in charge of another is a self-evident truth, and is denied by no legal authority."

Proceedings for the appointment of a guardian, had upon no other assurance of the fact of Mrs. Eslava's lunacy than the petition of her husband, without notice to her, and without the issuance of a writ de lunatico inquirendo, constituted the subject of consideration in the leading case of Eslava v. Lepretre, supra. The court said:

"Without the issue of this writ, and the finding of a jury, the county court judge had no power to declare her a lunatic, or to appoint a guardian for her. These proceedings are indispensable to give the county court jurisdiction to make the appointment; and as they were not had, and that court is one of limited jurisdiction, the proceedings on the appointment of guardians are coram non judice and void. Such being the case, they may be impeached in any court, in a collateral proceeding, in which a party seeks a benefit under them. Wightman v. Karsner, 20 Ala. 446; 10 Peters, 449; 13 Id. 511; 6 Wheat. 109; 3 How. [U. S. R.] 762; 5 Hill (N. Y.) 568; 11 Wend. 652; 8 S. & M. 521; 16 Vermont, 251."

This case is reported in 56 Am. Dec. 266, as the leading case on the subject of notice to a party proceeded against in the orphans' or probate court to declare him non compos mentis and to appoint a guardian for him. In Notes on American Decisions, vol. 8, pp. 380, 381, is the following:

"Validity of Appointment of Guardian of Lunatic.—Cited in Craft v. Simon, 118 Ala. 625, 24 South. 380, to the point that guardian cannot be appointed for lunatic unless he is legally declared such; Jones v. Learned, 17 Colo. App. 76, 66 Pac. 1071, holding judgment declaring person a lunatic and appointing conservator of his estate without verdict of jury void; North v. Joslin, 59 Mich. 624, 26 N. W. 910, holding guardian cannot be appointed for lunatic unless latter has been legally adjudged mentally incompetent."

The cases of McCurry v. Hooper, supra, and Eslava v. Lepretre, supra, are cited with approval as to necessity of notice in judicial proceedings in Betancourt v. Eberlin, 71 Ala. 461, 468, holding that notice is an essential element of all judicial proceedings which are to operate personally, but it need not be personal; Dugger v. Tayloe, 60 Ala. 504, 519, holding that decree rendered on application of purchaser for conveyance of decedent's land sold for equitable division, without notice to administrator, is void; Thompson v. Campbell, 57 Ala. 183, 190, to the point that

in suits to foreclose mortgages all interest, legal and equitable, should be brought before the court; Bland v. Bowie, 53 Ala. 152, 160, holding that decree for sale of land for distribution can only be vacated on notice to heirs and devisees. In McAnally v. Alabama Insane Hospital, 109 Ala. 109, 115, 19 South. 492, 493 (34 L. R. A. 223, 55 Am. St. Rep. 923), it was declared that one is not civilly dead who is insane, and that it could not "be said to be where process may not be served on him." Many authorities to the same effect are collected in 23 L. R. A. 737–744.

A further observation of the requirement for notice to a party sought to be adjudged non compos mentis in inquisition proceedings under the due process clause of the Constitution of the United States and of the state of Alabama is shown in the provision for and requirement of notice in civil actions against insane persons, in sections 3101, 5313, 5314, of the Code of 1907. See McDowell Act, amendment of section 3101, in Gen. Acts 1919, p. 67.

It follows that in an inquisition by order of the probate court to ascertain whether an individual is non compos mentis, if the proceedings are held without notice and opportunity to be heard to the person proceeded against, the verdict of the jury in such case and judgment thereon are void, and evidence for no purpose to effect the rights of the individual so proceeded against or of any one claiming under or through him; that is, if the alleged non compos did not have personal notice, or, if insane, such notice as amounted to personal notice (as having been in the custody of the sheriff of the county where the inquisition is held and of his residence) of the pendency of the inquisition of lunacy against him, on such inquisition the appointment by the probate court of a guardian for such person and proceedings had by such guardian for the sale of his lands or properties, without notice, are void. Thomas v. Dumas, 30 Ala. 83, 86; Hunt's Heirs v. Ellison's Heirs, 32 Ala. 173, 187; Laughinghouse v. Laughinghouse, supra; Gardner's Ex'r v. Gardner's Heirs, 42 Ala. 161; Moody v. Bibb, supra; Bland v. Bowie, supra; Ex parte Trice, 53 Ala. 546, 548; Dugger v. Tayloe, supra; Molton v. Henderson, supra; Wilburn v. McCalley, 63 Ala. 436, 445; Betancourt v. Eberlin, supra; Stephenson v. Brunson, 83 Ala. 455, 458, 3 South. 768; Gill v. More, 200 Ala. 511, 76 South. 453, 458; Fleming v. Copeland, 200 Ala. 531, 76 South. 857; Evans v. Evans, supra.

The writer entertains the view that the necessity for notice would not have been different though the person proceeded against had been confined at the time in an asylum or hospital within or without the state; that the statutory provision "if the person alleged to be of unsound mind is a resident of the county, and is at the time of the application confined in an hospital or asylum within or without the state, inquisition may be had and taken without notice to him" (section 4351, Code) on appointment of a guardian ad litem to represent and defend for him, does not afford a defendant in petition for inquisition due process of law; and that proceedings had under such statute without notice would be void. Fourteenth Amendment, Const. U. S.: Const. Ala. 1901, art. 1, §§ 6, 7, 13. Justices SAYRE and GARDNER do not concur on this point.

The writer, though differing with, is not disposed to controvert with, his Brothers the necessity for declaring the statute in question unconstitutional (Code, § 4351), since we are agreed that the facts are sufficiently averred in the bill as last amended to show that the proceedings and verdict of the jury for and on the alleged inquisition against Jack Jones, the order of appointment of guardian for his person and estate, and the proceedings and orders for the sale of his lands were without notice, and for such reason the verdict of the jury and said orders were coram non judice and void. The demurrer refiled to the bill as last amended was sufficient to test the legality of the proceedings and the verdict of the jury on inquisition in the Calhoun probate court against the person and estate of said Jones, the orders thereon and decree appointing J. R. Castleberry as his guardian, the several orders resulting in the alleged sale of complainant's land and the confirmation thereof, averred to have been without notice to him and without his being duly made a party thereto, as required by the organic law of the land.

It is not necessary to cite authorities from other jurisdictions. For convenient reference it may be noted that many cases on due process are collected in notes to 23 L. R. A. 737–744. See, also, Hutchins v. Johnson, 12 Conn. 376, 30 Am. Dec. 622; Davison v. Johonnot, 7 Metc. (Mass.) 388, 41 Am. Dec. 448; Chase v. Hathaway, 14 Mass. 222, 224; Brigham v. Boston & A. R. Co., 102 Mass. 14; Hathaway v. Clark, 5 Pick. (Mass.) 490; Allis v. Morton, 4 Gray (Mass.) 63. The authorities make no distinction as to the necessity for notice likewise of proceedings to declare a person non compos as of the appointment of a guardian for the person and estate of such non compos; that is to say, said proceedings or orders without notice have been declared void in an inquisition without notice in McCurry v. Hooper, supra, and as to the appointment of a guardian and proceedings thereon without notice in Eslava v. Lapretre, supra.

We cannot agree to the estoppel enforced in Dutcher v. Hill, 29 Mo. 271, 77 Am. Dec. 572, as applicable in denial of complainant's constitutional right. In that case the subsequent proceeding in the cause, out of which the estoppel arose, was under no statute as

that of force in this jurisdiction. Code, § 4352. We find that Dutcher's Case has been followed in only two others, viz.: Logue v. Fenning, 29 App. D. C. 519, 527, to the effect that where a party adjudged a lunatic in a proceeding in which a committee of his estate was also appointed secures his release in habeas corpus proceedings and, instead of assailing the lunacy proceeding as null and void, takes steps in that proceeding attacking the committee's account, he is estopped, having elected a remedy recognizing the validity of the proceeding, from also attacking in the same proceeding the validity of the order adjudging him a lunatic on the ground of insufficient notice and of the order appointing a committee for want of notice; and Coleman v. Farrar, 112 Mo. 54, 20 S. W. 441, holding that one who files information in the probate court charging another's insanity, receives appointment as his guardian, gives bond, and takes charge of his estate, is thereafter estopped to deny the validity of the proceeding in said court adjudging the insanity of his ward. This case is rested on Austin v. Loring, 63 Mo. 19, where a defendant in execution knew of a defect in service on him in the original suit, stood by at the sale, permitted his lands to be sold in satisfaction of his debts, demanded and received the surplus proceeds, was held estopped from laying claim to the land, and the purchaser at such sale was protected, the proceeding being regular; and on Adair v. Adair, 78 Mo. 630, where it was held that a purchaser at executor's sale could not at the same time claim under the sale and also plead that it was not made in accordance with the order of the court. The case of Logue v. Fenning, supra, is also rested on Davis v. Wakelee, 156 U. S. 680, 689, 15 Sup. Ct. 555, 558 (39 L. Ed. 578), where Mr. Justice Brown said:

"If Davis had been mistaken as to his legal rights with respect to this judgment and its subsequent discharge, his assertion that it was still of record and in full force is none the less binding upon him, in view of Wakelee's acquiescence in the ruling of the court sustaining this contention;" that where a party assumes a certain position in a legal proceeding "and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him."

When these cases of estoppel are thus understood, they do not go to the extent of the conclusion announced in Dutcher v. Hill, supra.

In the instant case no fact is averred to show that complainant was guilty of a culpable silence or of affirmative word or act that misled or deceived the purchaser of his real or personal properties at the purported guardian's sale thereof, or that so misled or deceived the alleged guardian to his injury.

This was an essential element of equitable estoppel recently announced in Ivy v. Hood, 202 Ala. 121, 123, 79 South. 587, 589, to wit:

"(1) Conduct, which may consist of acts, language, or an estopping or culpable silence, not a mere silence, that amounts to a representation or concealment of a material fact (2) actually known or necessarily imputed to be known to the party estopped at the time of the conduct; (3) the truth concerning which fact was unknown to the party in whose behalf the estoppel is to operate, 'at the time when the conduct was done and at the time when it was acted upon by him.' (4) The conduct must have been done with the expectation, or under such circumstances as that it is probable and natural, that it will be acted upon, and (5) relied upon by the other party, who, thus relying, is led to act upon that conduct (6) in such manner as to change his position with reference to the subject-matter or properties. 2 Pom. Eq. Jur. §§ 805, 807. (7) To preclude the owner of land from asserting his legal title or interest under such circumstances, 'there must be shown either actual fraud, on his part, in concealing his title; or that he was silent when the circumstances would impel an honest man to speak; or such actual intervention on his part, as in Storrs v. Barker, 6 Johns. Ch. (N. Y.) 166, 10 Am. Dec. 316, so as to render it just that, as between him and the party acting upon his suggestion, he should bear the loss.' "

All phases and applications of the doctrine are embraced in the recent definition contained as section 804, 2 Pom. Eq. Jur. (4th Ed.) p. 1642, as follows:

"Equitable estoppel is the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed, either of property, of contract, or of remedy, as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right, either of property, of contract, or of remedy."

Tested by this rule, the complainant is not estopped in the asssertion of his title and right to the possession of his property alleged to have been sold by said guardian under void orders and decrees.

The fact that complainant applied to the probate court of Calhoun county in 1917, under section 4352 of the Code, had not the effect of validating a void judicial proceeding theretofore depriving Jones of his liberty and property without due process of law; nor will such subsequent proceeding prevent him from setting up the fatal invalidity of said former orders of the probate court in appropriate suits at law for the recovery of his properties or the value thereof or damages done thereto. He was only pursuing a statutory method of spreading upon the record evidence—the certificates in writing of physicians stating that after examination of such

person they believed him to be of sound mind —of the fact that petitioner was restored to sanity, entitled to the custody and management of his estate, and of the right to sue in his own name for the recovery of the same. Laughinghouse v. Laughinghouse, supra.

When J. R. Castleberry assumed to discharge the duties of his trust as complainant's guardian, he rendered himself liable to account as such trustee in a chancery court having jurisdiction to administer such trust. Corbitt v. Carroll, 50 Ala. 315; Moody v. Bibb, supra; Whetstone v. Whetstone's Ex'rs, 75 Ala. 495; Molton v. Henderson, supra; Borum v. Bell, 132 Ala. 85, 88, 31 South. 454; Snodgrass v. Snodgrass, 176 Ala. 282, 58 South. 199; Bibb v. McKinley, 9 Port. 636; Hall v. Hall, 43 Ala. 488, 94 Am. Dec. 703. As such guardian, he and sureties on his guardian's bond may be made to account for personal properties coming into his hands, or that should have been reduced to possession, and for a reasonable management of complainant's real property during the time the guardian had its possession. Such liability is subject to credit for sums actually expended for necessaries supplied by him in the maintenance of said Jones and in the necessary preservation of his said property. McGowan v. Milner, 195 Ala. 44, 49, 70 South. 175; May v. Duke, 61 Ala. 53. To the extent of a due settlement of administration of said trust, suit may be maintained against the guardian and surety in a court of equity.

Seasonable action is here sought directly attacking, in equity, and praying to have the alleged proceedings in inquisition of lunacy, appointment of guardian, the several orders of and for the sale of his land and other properties by said guardian, declared void and canceled for the want of notice and opportunity to be heard as provided and required by law. The want of notice or of due process not being disclosed on the face of the records challenged, but only shown by way of averment of fact, cancellation in chancery is necessary. There is no complete and adequate remedy at law.